No. 2258.

THOMAS DWYER v. THE GULF, COLORADO & SANTA FE
RAILWAY COMPANY.

1. COMMON CARRIER—BILL OF LADING.—A carrier may require the pro-
duction of a bill of lading before he delivers the goods, and he may
before delivery, when the consignee refuses to receipt for the goods.
But a carrier can not rightfully refuse to deliver the goods after inspect-
ing the bill of lading, on the ground that the bill is not surrendered to
him, if the consignee tenders the freight charges as contained in the bill,
and executes his receipt for the goods.

APPEAL from Washington. Tried below before the Hon. I. B.
McFarland.

*Bassett, Muse & Muse*, for appellant: The bill of lading was the
property of the plaintiff, and it would be immaterial if it were,
as supposed by defendant's witnesses, of no value at all, or of
only a remote and potential value; but, in point of fact, it was
the evidence of plaintiff's rights, not only against the defend-
ant, but against the receipting carrier and all other connecting
lines, and, as such, it had a value, and was property which
could not be lawfully taken without the plaintiff's consent. (M.
P. R'y Co. v. Rains & Heard, 3 Wils. Cond. C. A., sec. 68.)

*Garrett, Searcy & Bryan*, for appellee: The custom relied
upon by defendant in its defense, viz., the delivering carrier re-
quiring consignees or holders of through bills of lading to sur-
render their bills of lading to such carrier whenever a dispute
or difference arises as to overcharges upon through shipments
of freight, upon such carrier accepting the amount specified in
the bill of lading and delivering the goods, is not in contraven-
tion of the law, but is in aid of it. (Constitution, art. 10, sec. 1;
Rev. Stat., arts. 280, 282, 4237, 4251, 4252, 4253; Gen. Laws 1883,
chap. 70, p. 69, sec. 8; Id., 1882, p. 35; W. & W. Civ. Cas., sec. 1257
and cases cited; Womack v. W. U. Tel. Co., 58 Texas, 179; W.
U. Tel. Co. v. Neill, 57 Texas, 289; W. U. Tel. Co. v. Edsall, 63
Texas, 675; W. U. Tel. Co. v. Rains, 63 Texas, 27; McEnter v.
R. R., 5 Am. Rep., 216; Bass v. Glover, 1 A. & E. R. C., 277;
Chandler v. Fulton, 10 Texas, 19; 1 Smith's Leading Cases.

MALTBIE, PRESIDING JUDGE.   The question to be determined, is, can a railroad company in this State, lawfully refuse to deliver goods in its possession, to the owner or consignee, upon tender of the freight charges, as shown by bill of lading, where the goods have been hauled over connecting roads and the charges shown by the way bill are greater than those on bill of lading, unless it be surrendered to the carrier.   Section 1 of an act of the Legislature, provides, that it shall be unlawful for any railroad company to collect from the owner or consignee of any goods, wares or merchandise, a greater sum for transporting the same than is specified in the bill of lading.   Section 2 declares that any railroad company having possession of goods, wares or merchandise, shall deliver the same to the owner or consignee upon payment of freight charges as shown by bill of lading, while section 3 prescribes a penalty for refusing to deliver the goods, wares or merchandise upon payment or tender of the freight charges as shown by the bill of lading.   (General Laws, passed at Called Session of Seventeenth Legislature, p. 35.)   A car load of nails were shipped from Pittsburgh, Pennsylvania, over several lines of road, including that of appellee, to Thomas Dwyer, the appellant, at Brenham, Texas.   Dwyer tendered the freight, as shown by the bill of lading, and demanded the nails.   Appellee refused to deliver them unless appellant would surrender the bill of lading, claiming that the freight charge as shown by bill of lading, was less than shown by way bill accompanying the goods, and that the bill of lading was necessary or convenient for it in making settlement of freight with the other roads, as it would have to settle for the amount charged in way bill, unless a different rate was shown to have been fixed by contract.   It was proven that a custom had existed at Brenham and other places for several years for owners and consignees of goods to surrender bills of lading to the delivery carrier, under like circumstances, upon its delivering the goods to them.   It was also proven that the amount charged in the way bill, was greater than that in the bill of lading; and that appellee demanded the latter sum only.   It was shown that the bill of lading was useful to appellee in making settlement with other roads and its station agent, and that it was useful to appellant after the delivery of the goods when it became necessary to make a claim against some one on account of the goods being damaged, which rarely occurred.   But it was shown that appellant had before this, surrendered a bill of lading to appel-

lee, and that it becoming necessary to institute suit on account of the damaged condition of the goods, demand was made on the station agent at Brenham, to whom it had been delivered, that it be restored, but the agent failed to return it for the alleged reason that it had been sent to the general office of the company, and could not be had. Under these facts, can appellee lawfully withhold the goods?

It has been said, as we think upon sound reasoning, "that, as in general, a bill of lading is assignable by the consignee and sometimes by the consignor, so as to render the carrier liable to make delivery to the assignee, it seems no unreasonable regulation to require the production of the bill of lading as a condition of delivery." (Bass v. Glover, 63 Georgia, 746.) And again, it is said: "When a carrier delivers goods he has the right to demand of the party receiving them some written evidence that he has done so, and if the party refuse to give a receipt it will be a good defense to the action for the goods." (Skinner v. The Railroad, 12 Iowa, 191.) These requirements are obviously just and reasonable and in strict accord with the habits and customs of business men everywhere, and the refusal to perform such reasonable requests should be a sufficient excuse for the carrier to refuse to deliver the goods. As experience demonstrates, that such precautions are necessary to avoid disputes, law suits and losses, and the performing of such requirements could, in no event, entail loss or inconvenience on the consignor or owner of the goods. In the bill of lading there is a stipulation that this receipt is to be presented without alteration or erasure, and it seems a fair inference of the statute that the bill of lading should be presented to the delivering carrier, that it might be satisfied of its authenticity as well as the correctness of the freight charges before paying them. But we do not believe that it follows, that the bill of lading should be surrendered, from the fact that it is required to be presented in order to obtain possession of the goods. It is claimed that after possession of the goods has been delivered to the owner or consignor the bill of lading becomes the property of the carrier, and the carrier is entitled to possession of it. Upon like reason, as is claimed, the maker of a note upon payment, is entitled to the possession as against the payee. The instances are not analagous, for after the note is paid it is entirely useless to the payee, and this may be the reason of the universal custom of surrendering the note instead of executing a receipt for its payment; but, as before suggested,

the bill of lading may be of use to the consignor or owner of the goods after a delivery has been made.    It must be conceded that the bill of lading was at one time the property of the owner of the goods, and it is not perceived how the delivery of them could destroy his right in this property without his consent.    If the right to the bill of lading, which is both a receipt and a contract in writing, passed to the carrier upon the delivery of the goods, there would be no need to invoke the law of custom; but if it did not, it follows that the owner could not be deprived of it without his consent.    And it is, we think, unreasonable that a custom should require the surrender of a valuable right in order to obtain possession of property, that the law without condition or qualification requires should be delivered.    A usage or custom contrary to the command of a statute is void." (1 Blackstone, 77; 3 Term Reports, 271; Lawson on Usages and Customs, 453.)

A statute of the State commands the carrier, upon tender of the freight charges, as contained in the bill of lading, to deliver the goods; this can not be avoided by making an unreasonable demand upon the consignee as a condition precedent to obeying the law.    As well might it demand the payment of money as the surrender of a valuable right.    A duplicate or copy of the bill of lading would have answered the carrier's purpose.    Because the value of property is small, and the probability of its being needed by the owner remote, does not authorize the taking of it by coercing the owner to surrender it in order to obtain property to which he was otherwise entitled, though the owner or consignor might be required to comply with any reasonable regulation necessary to protect the carrier from loss on account of delivering up the goods, and any reasonable regulation necessary to the protection of the carrier, and not detrimental to the rights of the owner or consigner, would not be in contravention of the reason and spirit of the statute.

For the reasons herein stated we are of opinion that the judgment should be reversed and the cause remanded.

*Reversed and remanded.*

Opinion adopted February 7, 1888.