NO. 6578.

THE STATE OF TEXAS *v.* THE DAY LAND AND CATTLE COMPANY.

1. LAND BOARD—JURISDICTION OF.—The act of April 12, 1883, entitled "An act to provide for the classification, sale and lease of the lands heretofore surveyed and set apart for the benefit of the common school, University, the Lunatic, Blind, Deaf and Dumb and Orphan assylum funds," designates the lands authorized to be sold and leased in the words of the caption.

2. SAME.—The sixteenth section of said act, providing the manner of leasing the lands, must be taken to apply to the lands described in the first section of the act, which first section describes the lands to which the act was intended to refer.

3. SAME.—This construction is imperative from that provision in the Constitution which requires that the subject of a bill shall be expressed in its title.

4. SAME.—The statute did not affect any land except the school, university and asylum lands, and then only after they had been surveyed and set apart.

5. LANDS IN GREER COUNTY.—By act of February 25, 1879, the vacant lands in Greer county were appropriated one-half to the public free schools and the other for the payment of the public debt, and that the lands should be surveyed and disposed of in such manner as should be prescribed by law. No law had provided for such surveying and disposition of these lands at the time of the acts drawn in question in this case, and it follows that the act of the Land Board without such or any authority was unauthorized and void.

6. SAME—IMPLIED LEASE.—As the law did not authorize an express lease none could be implied from the acts of the parties.

7. OCCUPANCY OF PUBLIC LAND FORBIDDEN.—The act of February 4, 1884, prohibiting the grazing, etc., upon public lands without lease in effect forbade the private occupancy of the lands not subject to the Land Board under penalties, etc. It was the policy of the law that such lands should be for the use of the people in general.

8. PENALTY FOR OCCUPYING PUBLIC LAND.—This action was not brought for the penalty prescribed for such invasion of public rights, and relief was properly refused.

APPEAL from Travis. Tried below before the Hon. A. S. Walker.

This suit was instituted in the district court of Travis county on the sixth day of January, 1887, by the State of Texas as

plaintiff, against the Day Land and Cattle Company as defendant, to recover from defendant the sum of twelve thousand, one hundred and eighty dollars and interest; alleged to be due to plaintiff from defendant as the second annual payment on a written contract, whereby plaintiff, through its Land Board, leased to defendant for the term of six years from the fourth day of August, 1885, two hundred and three thousand acres of the public domain, situated in Greer county, Texas, at an annual rental of six cents per acre, payable annually in advance at the State treasury in Austin.   Plaintiff also asked, in a supplemental petition filed on the twenty-fourth day of May, 1887, that in the event the court should hold the lease contract invalid, that it have judgment against defendant for the reasonable rental value of the land during the time it was used and occupied by the defendant.   A trial was had before the judge, and the findings of fact and of law are here given:

"1.   The defendant company applied to the State Land Board for the lease of the land for six years at the time and on the terms as alleged in petition.   In August, 1885, the Land Board accepted the offer and awarded the land to defendant for six years, at six cents per acre rental per annum; and the defendant paid the rent for one year in advance.

"2.   Upon the awarding of said contract to defendant there were prepared duplicate contracts for lease of said land to defendant, as charged in petition; which contracts were signed and transmitted to defendant to its office in Austin.

"3.   Within a few months after the lease contract was executed, the defendant being in the possession of said land, began the construction or fences inclosing the same, and in the spring of 1886 defendant completed the fencing upon three sides of the said tract; leaving the north, which was inclosed in summer by line riding—there being no need of such work in cold weather.

"4.   Ever since the making of said contract the defendant, by its agents and employes has had possession, and has pastured cattle, etc., upon the said land, and still holds and enjoys the same.

"5.   There are other parties with stock upon the said lands, who at first held subordinate to defendant, but later disclaimed the right of defendant to control the land—and of such others are about two thousand head of cattle and about the same of

sheep. There is no evidence of defendant ever attempting to invoke the aid of the law against the other alleged trespassers.

"6. The defendant never signed the duplicate lease contracts, but they (the contracts) remained in the office of defendant. Nor has any rescission been demanded, save in the pleadings herein.

"7. The defendant, by one of its by laws, provides that it be not bound save by act, under seal, of its officers.

"8. The Land Board, by whose authority the contract was made, made and published certain orders and rules, which were made part of the record.   *   *

"9. The stipulated price per acre, as offered by defendant and accepted by the Land Board, was the reasonable rental value per annum of said lands. The lands lie in Greer county, Texas.

"10. The lands in Greer county have never been surveyed, nor any part designated as public school land, etc.

"11. There is due upon said lease one year's rent."

Upon the facts and issues of law raised in the pleadings the court holds:

"1. That the Land Board was not authorized, under the act of April 12, 1883, to lease the lands in Greer county; nor is there any law authorizing the leasing of said lands by any person.

"2. The alleged contract sued on is without authority of law; and,

"3. Plaintiff can not recover for reasonable value for use of the lands as claimed in supplemental petition."

*James S. Hogg,* Attorney General, *James H. Robertson,* District Attorney, and *H. B. Marsh,* for appellant: The Legislature having appropriated one-half the land in Greer county to the public schools, the Land Board had the right to lease one-half the land in said county, and this, though no survey of said lands had ever been made and no parts thereof designated as public school lands. (Act of February 25, 1879, Gen. Laws 16th Leg., 16; act of April 12, 1883, Gen. Laws 18th Leg., 85; 68 Texas, 526, Day Company v. The State of Texas.)

The court erred in the second conclusion of law, in holding that the contract sued on is without authority of law, because:

1. The contract sued on and found by the court to have been executed is a valid legal obligation.

2. There is no law prohibiting the leasing of land in Greer county, and the defendant having leased the same, occupied and enjoyed the use thereof, under the contract, can not now be heard to interpose the want of legal authority in making the contract.

3. The contract is not forbidden by the law. It is not against good morals and public policy. It is shown to have been made voluntarily by defendant, and defendant accepted its provisions and enjoyed the benefits it secured. Hence, it was error for the court to hold the contract to be illegal and void.

The defendant company having voluntarily made the contract with the Land Board for the lease of the land, paid one year's rent therefor, and having taken possession of, fenced, used and occupied the land exclusively under and by virtue of the contract, was estopped, in so far as the contract has been executed—it being a contract not against public policy, but in harmony with the policy of the State, which is to lease the public lands—from contesting the right of the Board to make the contract or the validity of the lease by which it acquired possession of the land. (44 Texas, 371, Word v. Drouthett; Taylor's Landlord and Tenant, secs. 629, 705, 706 and 707; 18 Am. Decis., 99, 7 Conn., 214, Stow v. Wyse; 25 Am. Decis., 114, 1 Dana, 1, Hauly v. Blackford; 20 Am. Rep., 504, 63 N. Y., 62, Whitney Co. v. Barlow; 93 N. Y., 609, Woodruff v. Ry. Co.; 15 N. Y., 327, Vernam v. Smith; 10 Wall, 395, United States v. Hodson; 5 Peters, 115, United States v. Tingey.)

It is well settled in this State that the State may maintain an action of trespass to try title to land; and from this it follows that a recovery may be had for the reasonable rental value for the time it was used and occupied. Therefore, the action for a quantum meruit in this case was properly brought, in the event that the court should hold that the contract was invalid. (Rev. Stats., art. 4809; Day Land and Cattle Company v. The State of Texas, 68 Texas, 256.)

The defendant company having, by permission of the State, fenced, used and occupied the land — not as an actual settler with the intention of acquiring a home, but with the idea of getting the benefit of the land for grazing purposes—it became liable to pay to the State the reasonable rental value of same

for the purposes for which the same was used by said company, and this though the Land Board had no authority to make the lease in the first instance. (United States v. Brighton Ranch Company, 25 Fed. Rep., 465; United States v. Brighton Ranch Company, 2'; Fed. Rep., 218; Rector v. Gibbon, 111 United States Rep., 276; Gunn v. Scovil, 4 Day, 228; same case, 4 Am. Dec., 208; Sutton v. Mandeville, 1 Munford, 407; same case, 4 Am. Dec., 549; Patterson v. Stoddard, 74 Am. Dec., 490; same case, 47 Me., 355; Clark v. Green, 35 Ga., 92; Sargent v. Ashe, 23 Me., 201; Little v. Martin, 3 Wend., 219; Haynes v. Worthingham, 14 Ind., 320.)

*Anderson, Flint & Anderson* and *West & McGown*, attorneys for appellee, the Day Land and Cattle Company: The lands claimed to have been leased by appellee never having been classified, surveyed or set apart for the benefit of any recognized fund in accordance with the act of April 12, 1883, the State Land Board, the creature of that act, had no authority in law to lease the same.

Act of April 12, 1883 (Laws of 1883, p. 85, et seq.) is entitled "An act to provide for the classification, sale and lease of the lands heretofore or hereafter surveyed for the benefit of the common school, University, the Lunatic, Blind, Deaf and Dumb and Orphan Asylum funds." Section 3 of the act provides that the lands belonging to the respective funds shall be classified into argricultural, pasture and timber lands. Also, that the State Land Board created by this act shall cause a tabulated statement of the land in each county to be made, showing the number of survey, block, quantity in each survey, name of company or individual to whom certificate was granted, value of improvement, the owner, etc. On the application the land is described as belonging to the public domain fund, but nothing is stated as to the number of the survey, section, block, etc. The lands in Greer have never been surveyed, nor any parts designated as public school lands. (Acts of Aril 12, 1883, Gen. Laws, 85, et seq.; Day Company v. The State, 68 Texas, 341; Adams v. Houston & Texas Central Railway Company, 70 Texas, 252.)

Appellant having chosen to sue on a lease contract declared to be void, can not in such suit recover for the use and occupation of the lands claimed to have been leased.

The suit is on a lease contract alleged to have been entered

into by appellee and appellant, the latter acting through its agent, the State Land Board. By a supplemental petition, appellant asks that, in case the lease be declared void, it have judgment for rental value of the identical land it claims to have leased appellee.

Appellant having sued on a contract, if the same is declared void can not recover in the same suit against appellee the reasonable rental value of the identical premises on allegations made in a supplemental petition—said allegations disclosing a new suit, and not being in reply to appellant's original answer. (Rules Dist. Ct., No. 5.)

*Quantum meruit* being based on a contract existing impliedly or expressly between parties, an action for a *quantum meruit* is not maintainable on a contract declared to be void.

This is not a suit under form of trespass to try title. (2 Repalje's Law Dictionary, 1046.)

The State can not maintain an action for the rental value of its unappropriated public domain in the absence of a special authority to bring such suit.

The court in its findings holds that the Land Board had no authority to act for the State with appellee. The record fails to show any authority to maintain such a suit in behalf of the State by any person.

Appellant, in the absence of special authority or law for that purpose, can not maintain a suit against persons for occupying as public commons public domain of the State not set aside specifically for any particular fund or purpose. (Champion v. Vincent, 20 Texas, 811; Cole v. Tucker, 6 Texas, 266; 2 Wills. Rep., sec. 361.)

GAINES, ASSOCIATE JUSTICE. In July, 1885, the appellee, a corporation, made application to the Land Board constituted by the act of April 12, 1883, to lease a large body of the public domain in Greer county. The Board accepted the applicant's bid of six cents per acre, and executed to it a lease of two hundred and three thousand acres for the term of six years. The rent for the first year was paid, and this suit was originally instituted by the State to recover the rent for the second year. The defendant corporation having set up its answer as a defense that the action of the Land Board was without authority of law and void, a supplemental petition was filed which alleged the occupation and use of the lands by the defendant by fencing,

herding and grazing cattle upon them during the time for which the rent was sought to be recovered, and praying, in the event the lease should be adjudged void, a recovery of the reasonable value of such use and occupation. Upon the trial the court found as matters of fact that the lease was executed and that the lands were occupied and used as alleged in the petition and supplemental petition, but concluded as a matter of law that the State could not recover.

The act by which it is sought to sustain the authority of the State Land Board to make the lease in question is entitled "an act to provide for the classification sale and lease of the lands heretofore or hereafter surveyed and set apart for the benefit of the common school, University, the Lunatic, Blind, Deaf and Dumb, and Orphan Asylum funds." The first section directs that the lands may be sold and leased as thereinafter provided, and in designating them follows literally the language of the title. The sixteenth section, which provides the manner of leasing, reads as follows: "Pasture lands and agricultural lands not timbered may be leased in suitable quantities for stock and ranch purposes," etc. This language, however, must be taken to refer to the lands described in the first section of the act. This construction is made imperative by that provision of the Constitution which requires that the subject of a bill shall be expressed in its title. It is clear, therefore, that this statute did not confer authority upon the Land Board to lease any land except the school, University and Asylum lands, and then only after they had been surveyed and set apart. By the act of February 25, 1879, "all the vacant unappropriated public domain embraced in the territorial limits of the county of Greer" is appropriated, one-half to the public free schools and the other for the payment of the public debt. The act further provides that the lands shall be subsequently surveyed and disposed of in such manner as may thereafter be provided by law. No statute has since been passed for the survey and disposition of these lands. We are of opinion, therefore, that the State Land Board, in attempting to make a lease of any part of the public domain in Greer county, clearly transcended its authority, and that the lease purporting to have been made by it to appellee must be held void. By the pretended lease the appellee acquired no right and incurred no obligation.

But it is insisted, that one who goes into possession of property under a lease purporting to be executed by authority of an

other, is estopped to deny the authority after he has enjoyed the benefits of the tenancy. This may be true as a general proposition; yet, we think, the principle does not apply in this case. Until a recent date, it has been the policy of the State to permit the use of the public lands by the people at large as public commons. In April, 1879, a law was passed requiring persons who should fence school lands to pay rent at the rate of twenty-five dollars per section per annum. This applied only to lands which had been surveyed and set apart for the benefit of the school fund. This was followed by the more comprehensive act, under which the lease in this case was attempted to be made. The statute of April, 1879, recites in its preamble as the cause of its enactment, that many persons had enclosed a large portion of the public free school lands and thereby severed them from the public commons to the exclusion of others. This indicates that at the date of that act a right of common in the public domain was recognized by the Legislature; and the policy to hold them for location and sale and not revenue. The act of April 12, 1883, provided for the lease of lands which had been surveyed and set apart to the benefit of the several funds named in it, but as we have shown, applied to no other parts of the public domain. All other lands were left to the operation of the previous laws; and it was evidently not contemplated that any income should be derived from them. It was clearly the will of the Legislature that they should not be subject to lease until they were surveyed and set apart for the benefit of one of the funds named in the act. Any attempted leases of such lands were then not only void for want of authority in those who acted as agents of the State, but also for the reason that the leases themselves were wholly without authority of law and in contravention of the policy of the State. It may be that a tenant can not deny the authority to make the lease after he has had the use of the premises under it where the authority may be lawfully conferred, but it does not follow, that one who has held possession under a void lease, may not set up its invalidity, when no lease can be lawfully made. It follows from what we have said, that we are of the opinion that the court below did not err in holding, that the State can not recover upon the cause of action set out in the original petition.

But it is further insisted that the State was entitled to recover the reasonable value of the use and occupation of the

lands. The action for the use and occupation of land is maintainable when there is no express contract of lease, but where one may be implied from the circumstances of the case. (Taylor's Land. and Tenant, sec. 636; Wood's Land. and Tenant, 948.) In this case the State not having authorized the lands to be leased under any circumstances, and it being impossible to make an express lease, none can be implied. Not only was the attempted lease in this case without authority of law, but the permission sought to be given by the lease to the defendant was forbidden by the act of February 7, 1884, which prohibits herding for grazing purposes upon the public domain, unless the same shall "have been leased from proper authority." (Laws 1884, p. 70, sec. 6.)

Our conclusion is, that the occupation of the lands of the State, as alleged in the petition and as found by the court, was unlawful; but that the remedies, as sought in this action, are not those that are contemplated by the law for the wrong that was done to the State. The act last cited shows, as we think, that it was the policy of the Legislature to permit the public lands, which are not surveyed and set apart for the benefit of the State's institutions of learning and public charities, to remain open as commons for the use of the people in general, and that the intention was to enforce this policy against those who should occupy the lands in contravention of the provisions of the law, by penalties recoverable in the criminal and civil actions therein provided. This action is not brought for the recovery of the penalty provided by the act and can not, in our judgment, be maintained.

The judgment is therefore affirmed.

*Affirmed.*

Opinion delivered June 22, 1888.

[Associate Justice Walker not sitting.]