### R. J. POOLE ET AL. v. BURNET COUNTY.

No. 1233. Decided October 26, 1903.

**1.—County Treasurer—Available School Fund.**

The available school fund is one of the funds embraced in the provisions of article 867 of the Revised Statutes, which are required to be counted by the commissioners court. The language "all moneys received and disbursed by him" (the county treasurer) used in article 928, prescribing the report to be made to the commissioners court, is broad enough to include the available school fund the treasurer has received either from the State or the county. (Pp. 82, 83.)

**2.—Same—Treasurer's Bonds.**

Article 921 of the Revised Statutes, which provides that, in addition to his general bond the county treasurer shall give a bond to secure the school fund coming into his custody, further fixes the school fund as one coming

under the control and supervision of the county authorities. Following Kempner v. County of Galveston, 73 Texas, 231. See also Burk v. County of Galveston, 76 Texas, 267, and Kempner v. County of Galveston, 76 Texas, 450. (P. 83.)

**3.—Same—Treasurer's Report.**

The reports required by article 928 to be made to each regular term of the commissioners court are the reports mentioned in article 867 as the quarterly reports of the treasurer. That article is designed to secure the enforcement of the conditions of the treasurer's school fund bond "that he will safely keep and faithfully disburse the school fund according to law;" and it requires not only that the money shall be accounted for, but shall be actually kept, and actually in the hands of the treasurer to be counted and examined by the commissioners court at each regular term thereof. (Pp. 83, 84.)

**4.—Treasurer's Relation to County—Not a Bailee.**

The relation of the county treasurer to the county, or to the school fund, is not that of a bailee, nor is it that of a debtor in the ordinary meaning of the term. He is a public officer intrusted with the money which belongs to the public, which continues to be public funds in his hands; his duties are prescribed by statute, and his obligations are fixed by the law and the terms of his bond. There is absolutely no qualification about the contract between the county and the treasurer, and the law and the bond obligate the latter to safely keep and faithfully disburse the money. (Pp. 84, 85.)

**5.—Breach of Bond—Treasurer's Liability—County's Cause of Action.**

When the commissioners court examined the report of the treasurer in this case and found that he had not the school fund on hand, it was established that he had not safely kept the school fund, and, therefore, there was a breach of his bond, and a right of action arose in favor of the county for the recovery and restoration of the school fund. (P. 85.)

**6.—Practice in Supreme Court.**

The Supreme Court can not be called upon to answer certified questions not coming within the statutes and rules governing its proceedings. (P. 85.)

Questions certified from the Court of Civil Appeals for the Third District, in an appeal from Burnet County.

*Matthews & Browning,* for appellants.—The bond sued on was more onerous than required by law, contained conditions not authorized by the statute, and did not contain the conditions required by the statute for the bonds of county treasurers to secure the school fund, and was, therefore, not a valid statutory bond. Rev. Stats., arts. 920, 921, 923; Johnson v. Erskine, 9 Texas, 1; National Bank v. Lester, 73 Texas, 545; Reid v. Fernandez, 52 Texas, 381 to 383; Haile v. Oliver, 52 Texas, 446; Turner v. State, 14 Texas Crim. App., 168; Wooters v. Smith, 56 Texas, 206.

The plaintiff not having the right to make a contract for the safe keeping of the school fund or any other contract with regard thereto, the instrument sued on is not a valid common law bond. Wooters v. Smith, 56 Texas, 206; United States v. Tingey, 5 Pet., 125; United States v. Hodson, 77 U. S., 395; Rev. Stats., arts. 3917, 3929a, 3935d, 3931; Culberson v. Gilmer Bank, 20 Texas Civ. App., 565; Webb County v. Board of School Trustees, 95 Texas, 131; Oge v. Froboese, 66 S. W. Rep., 690; Rev. Stats., art. 921; Johnson v. Erskine, 9 Texas, 1; Jacobs v. Dougherty, 78 Texas, 682; United States v. Linn, 15 Pet., 313.

The only breach of the bond alleged is the failure of the appellant Poole to safely keep and faithfully disburse the school fund. The only way in which the said Poole could lawfully disburse the

school fund was by paying such warrants as might be drawn on him by competent authority, and it not being alleged that he had failed to pay any such warrants no breach of the bond was alleged. Rev. Stats., arts. 3935, 3935d, 3931, 3917, 3962; Oge v. Froboese, 66 S. W. Rep., 689; Buffalo County v. Van Sickle, 16 Neb., 363; State v. Thomas, 17 Mo., 503.

Since the passage of the act of the Legislature of the State of Texas, entitled, "An act to amend article 867, chapter 1, title 25, of the Revised Civil Statutes of the State of Texas, relating to county finances," approved March 20, 1897, county treasurers are only liable as bailees for the funds in their hands as such treasurers, and the relations between them and their respective counties are not those of debtor and creditor, and they are not liable for funds in their hands as such treasurer which have been lost without any negligence on their part. The court therefore erred in sustaining the plaintiff's first special exception to the defendants' first amended original answer, and in striking out that part of their said answer wherein they alleged that the school fund sued for had been lost without any negligence on the part of said Poole. Rev. Stats., art. 1867, amended by Act of March 20, 1897; Wilson v. People (Colo.), 22 Law. Rep. Ann., 449; United States v. Thomas, 82 U. S., 337; State v. Copeland, 34 S. W. Rep., 427; Healdsburg v. Mulligan (Cal.), 33 Law. Rep. Ann., 461; 52 Pac. Rep., 533; State of Wyoming v. Gramm, 40 Law. Rep. Ann., 691; City of Livingston v. Woods (Mont.), 49 Pac. Rep., 438; Cumberland v. Pennell, 69 Me., 357.

*Ike D. White, T. E. Hammond,* and *Dayton Moses,* for appellee.—The bond sued on is conditioned substantially as required by law for the treasurer's bond securing the school fund, and is therefore valid as a statutory bond. Rev. Stats., arts. 3935a, 3935d, 3936, 921, 920, 928; Coe v. Foree, 20 Texas Civ. App., 550; Lassater v. Waites, 4 Texas. Ct. Rep., 649.

The conditions of the bond sued on embrace substantially all the conditions required by the statute, and any additional conditions therein contained will be rejected as surplusage, and the bond sustained and held valid as a statutory bond. Janes v. Langham, 29 Texas, 418; See authorities under next preceding counter proposition; United States v. Bradley, 10 Pet., 364; United States v. Mora, 97 U. S., 413; 4 Am. and Eng. Enc., 2 ed., 630.

If the bond sued on be not a statutory bond, it is nevertheless valid as a common law obligation, having been voluntarily given and not exacted colore officii. Johnson v. Erskine, 9 Texas, 8; Edmiston v. Concho County, 21 Texas Civ. App., 339; Bank v. Lester, 73 Texas, 542; Canal Co. v. Roberts, 62 Texas, 622; Jones v. Hays, 27 Texas, 1; Rose v. Winn, 51 Texas, 545; Jacobs v. Dougherty, 78 Texas, 682; Bains v. Wells, 10 Texas Civ. App., 628; United States v. Bradley, 10 Pet., 364; United States v. Mora, 97 U. S., 413; Ward v. Hubbard, 62 Texas, 559.

Defendant Poole had no natural right to the custody of the public school funds of Burnet County, that right being conferred upon him by law upon his giving bond payable to the county judge and his successor in office conditioned for its safe keeping, etc., and the County Judge of Burnet County having, under the law, general supervision of school matters and funds, had the right and authority to make a contract for its safe keeping, and Burnet County being, under the law, trustee for the school fund, and having general jurisdiction over all county matters, had the right to enforce the contract, especially since appellants elected to give the bond sued on. They will not be heard to contend that the bond is void after their principal had gotten the benefit of their contract and failed to comply with its terms and conditions.

The petition alleges that the defendant Poole had failed to safely keep and faithfully disburse the school fund and converted the same to his own use and benefit. It was not necessary to allege that warrants had been drawn upon him which he had failed to pay. Wilson v. Wichita County, 67 Texas, 649; Coe v. Foree, 20 Texas Civ. App., 552.

The nature of the liability of the county treasurer is that of a debtor to the county and not a mere bailee, and the act of the Twenty-fifth Legislature, page 27, being an act prescribing the duties of the com-missioners court and fixing a penalty for a failure to perform the duty thus imposed, in no way changes or affects the nature of the liability of the county treasurer, and plaintiff's exception to defendants' answer was properly sustained. Acts, 1897, 25th Leg., p. 27; Boggs v. State, 46 Texas, 10; Coe v. Foree, 2 Texas Civ. App., 550; Wilson v. Wichita County, 67 Texas, 649; Coe v. Nash, 40 S. W. Rep., 238; McKinney v. Robinson, 84 Texas, 489; State v. Walsen, 17 Colo., 174; United States v. Prescott, 3 How., 578.

The liability of the county treasurer with respect to the school fund of the county is that of debtor, not because of any express statutory enactment, but because of the liability growing out of the very nature of the duties and responsibilities he assumes when he becomes the custodian of school funds, and he, having no legal right to the custody of said funds, except upon the execution of a bond for its safe keeping, he having obtained possession of the said fund by the execution and delivery of the bond sued on, so conditioned, and having received the benefit accruing to him as custodian of said fund, he and his sureties are unconditionally liable for the amount of such fund lost by him, whether the bond sued on be construed to be a statutory or common law obligation, and plaintiff's exception was therefore properly sustained. Wilson v. Wichita County, 67 Texas, 649; Bank v. Lester, 73 Texas, 542; Fairchild v. Hedges, 31 Law. Rep. Ann., 581; State v. Gramm, 40 Law. Rep. Ann., 694.

The mode pointed out by law of ascertaining whether or not a shortage exists in the county treasurer's accounts is by an actual inspection and count of the cash and other assets in his hands by the commissioners court, and the commissioners court having general jurisdiction over

county funds and finances, has the authority, independent of any statutory enactment on the subject, at all reasonable times, to ascertain by actual count or otherwise whether or not the treasurer has lost or misapplied any county funds; and whether such court has the authority to demand that the treasurer produce the money for actual inspection and count or not. If the money belonging to any fund has been produced and counted, it is certainly competent to prove that fact and the amount of money found on hand by anyone who counted it, therefore the evidence complained of was properly admitted. Sayles' Civ. Stats., arts. 865, 867, as amended by Act of March 20, 1897.

The bond sued on having been introduced in evidence, and the uncontradicted evidence showing that Treasurer Poole lost and failed to safely keep the school fund of Burnet County, and that demand was made therefor, it was unnecessary to prove that any warrants were drawn against said fund and their payment refused by said Poole, and the fifth special instruction asked for by defendants was therefore properly refused. Arbuckle v. State, 81 Texas, 191; Mahon v. Kinney County, 28 S. W. Rep., 1025.

BROWN, ASSOCIATE JUSTICE.—This is a certified question from the Court of Civil Appeals for the Third Supreme Judicial District. The statement and questions are as follows:

"At the general election in 1900, R. J. Poole was elected county treasurer of Burnet County, Texas. On November 27, 1900, he executed his bond to the county judge of said county in the sum of $25,000, conditioned that he would safely keep and faithfully disburse the school fund of Burnet County according to law. The sureties upon the bond were W. H. Boggess, J. P. Barton, B. H. Stewart, W. J. Powell, Wm. Russell, J. H. Bryson, N. L. Ater, J. W. Wilkerson, and T. B. Baughan. This bond was properly approved by the county judge of said county December 3, 1900.

"On May 12, 1902, said R. J. Poole, as treasurer of said county, should have had in his hands a balance belonging to the school fund of said county amounting to $6234.02. The commissioners court of said county on said date, having ascertained from the reports of said treasurer that said amount should have been in his hands belonging to said fund, thereupon called on the said R. J. Poole to produce the money which he had actually on hand belonging to said fund, and said Poole then produced only $514.04, and the reason that he could not produce the remainder of said money was that he had deposited the same in the bank of W. H. Westfall & Co., which bank had become insolvent; and said treasurer when called upon to produce said money by said commissioners court, failed to produce more than $514.04, and he was then and up to the time of the trial, unable, for the reasons above stated, to produce the balance.

"The defendants plead in substance that said funds were lost without the negligence of said Poole; that the bank in which said funds

were deposited was generally regarded as a solvent institution, and that for many years it had been the custom of the treasurer of said county, with the knowledge of the county and its officers, to deposit the funds of said county in said bank; that the county had failed to furnish said treasurer with a safe or vault in which he could place and safely keep said funds, and that said Poole used due diligence and care to safely keep said funds, and that the loss thereof by the failure of said bank was not due to any negligence on the part of said Poole.

"Exceptions were sustained to this portion of the answer.

"Said Poole at the time of the trial of this cause was still the county treasurer of said county, and there is no evidence that he had failed to pay any warrant drawn against said fund, and being still in office, no occasion has ever arisen for him to pay the balance of said funds to his successor in office, so that the only evidence of a breach of said bond was the facts hereinbefore stated.

"Judgment was rendered against Poole and the sureties upon his bond for such amount of said school fund as he failed to produce.

"Upon the foregoing statement and findings of fact, the Court of Civil Appeals of the Third Supreme Judicial District certifies to the Supreme Court of Texas the following questions:

"1. Is the school fund one of the funds embraced in the provisions of the Revised Statutes, article 867, which are required to be counted by the commissioners court?

"2. If said article 867 applies to the school fund of the county, does said article change the liability of the county treasurer to the county from that of debtor, as fixed by the decisions of our Supreme Court in the cases of Boggs v. State, 46 Texas, 10, and Wilson v. Wichita County, 67 Texas, 647, to that of bailee for hire?

"3. If said article 867 applies to the school fund of the county, does a failure of the treasurer to produce the fund upon demand, in order that it may be counted by the commissioners court, and the inability of the treasurer to produce said funds, under the circumstances, and by reason of the facts above stated, constitute a breach of the bond prescribed by Revised Statutes, article 921, so as to authorize the county to sue for such amount as said treasurer fails to produce?

"4. Whether said article applies to the school fund or not, did said facts constitute a breach of said treasurer's bond, which would entitle the county to sue and recover thereon the balance of said funds which said treasurer was unable to produce and failed to produce, as aforesaid?"

We answer the first question in the affirmative.

The duty of the treasurer of the county to make reports to the county commissioners is prescribed by the following article of the Revised Statutes. Art. 928: "The county treasurer shall render a detailed report at every regular term of the commissioners court of his county of all the moneys received and disbursed by him, and all debts due to and from his county, and of all other proceedings in his office, and shall

exhibit to said court at every such term all his books and accounts for their inspection and all vouchers relating to the same, to be audited and allowed." . The language "all moneys received and disbursed by him" is broad enough to include the available school fund which the treasurer had received either from the State or from the county. There is no other expression of the Legislature which tends to limit the meaning of the language used in article 928; on the contrary, other provisions of the statute are in harmony with this construction. By article 921, Revised Statutes, the county treasurer is required to give, in addition to his general bond, a bond for the school fund, "payable to the county judge of such county, with two good and sufficient sureties, to be approved by such county judge, for a sum double the amount of such school fund, to be estimated by such county judge, conditioned that he will safely keep and faithfully disburse the school fund according to law," etc. The bond being payable to and to be approved by the county judge of the county, indicates that the school fund is under the control and supervision of the county authorities. This view of the statute was expressed in the case of Kempner v. County of Galveston, 73 Texas, 231, in the following language: "On the other hand, the county judge is given a supervision over the public schools of his county, and he is required to approve the warrants drawn on such available school fund. It is made his duty alone to approve the bond required by articles 989 and 3728 (921 and 3935 of present edition). This is a circumstance tending to indicate that the bond required to be approved by him alone is that intended to secure that fund alone of which he has a limited control, namely, the available fund." Again the court said, with reference to the report required by article 928: "Article 996 (928 in present statute) requires him to report the debts due to the county to the commissioners court, and the next succeeding article contains this language: He shall deliver the moneys, securities, and all other property of the county in his hands to his successor in office. These articles are sufficient to show, as we think, that it was contemplated that the county treasurer should be the custodian of the securities belonging to the school fund of the county." "All debts due to and from his county," etc., and "all moneys received and disbursed" are embraced in article 928, as matters to be reported by the treasurer to the commissioners court at each regular term, which shows conclusively, that "all moneys" and "all debts" which occur in the same sentence of that article embrace alike moneys of the general revenue as well as of the school fund. This view of the statute is further supported by the case of Kempner v. Galveston County, 73 Texas, 216; Burk v. The Same, 76 Texas, 267, and Kempner v. The Same, 76 Texas, 450, each of which cases hold, that an action upon the bond for the school fund can be maintained by the county.

The regular terms of the commissioners courts are prescribed by article 1552, Revised Statutes, to begin on the second Mondays in February, May, August and November of every year, that is, quarterly;

the reports required by article 928, to be made to each regular term, are the reports mentioned in article 867 as the quarterly reports of the treasurer. From the latter article we quote: "When the commissioners court has examined the quarterly report of the treasurer and found it correct, it shall cause an order to be entered upon the minutes of the commissioners court stating the approval thereof, which order shall recite separately the amount received and paid out of each fund by the treasurer since the preceding treasurer's quarterly report, and the balance of such fund if any remaining in the treasurer's hands." Said article further provides, "that said court shall actually inspect and count all of the actual cash and assets in the hands of the treasurer belonging to the county at the time of the examination of his said report," and each commissioner and county judge is required to make affidavit that such duty has been performed. The bond which the law requires the county treasurer to give for the school fund is conditioned, "that he will safely keep and faithfully disburse the school fund according to law." The requirements of article 867 were evidently designed to secure the enforcement of this condition; not only that the money should be accounted for, but that it should be actually kept, and that the money which belonged to each fund must be actually in the hands of the treasurer to be counted and examined by the commissioners court at each regular meeting of the said court. The report that is required of the treasurer by article 3936, Revised Statutes, is an annual report to be made for the purpose of preparing information to be transmitted by the treasurer, after it has been approved, to the Superintendent of Public Instruction. The fact that this report is required of the treasurer can not have the effect to limit the language of article 928. The purposes of the reports are distinctly different and the one does not in any way supplant the other.

To the second question we answer, that the relation of the county treasurer to the county, or to the school fund, is not that of a bailee, nor is it that of a debtor within the ordinary meaning of that term. If he were a debtor, the money would be the property of the officer and he could not be guilty of misapplying it as defined in article 103, Penal Code. The county treasurer is a public officer, intrusted with the money which belongs to the public, which continues to be public funds in his hands; his duties are prescribed by statute, and his obligations are fixed by the law and by the terms of his bond. Boggs v. State, 46 Texas, 10; Wilson v. Wichita County, 67 Texas, 647; United States v. Prescott, 3 How., 587; Boyden v. United States, 13 Wall., 24. In the case of United States v. Prescott, the court uses this language:

"This is not a case of bailment, and consequently the law of bailment does not apply to it. The liability of the defendant, Prescott, arises out of his official bond, and principles which are founded upon public policy.

"The condition of the bond has been broken, as the defendant, Prescott, failed to pay over the money received by him, when required to

do so; and the question is, whether he shall be exonerated from the condition of his bond, on the ground that the money had been stolen from him.

"The objection to this defense is, that it is not within the condition of the bond, and this would seem to be conclusive. The contract was entered into on his part, and there is no allegation of failure on the part of the government; how, then, can Prescott be discharged from his bond? He knew the extent of his obligation, when he entered into it, and he has realized the fruits of this obligation by the enjoyment of the office. Shall he be discharged from liability, contrary to his own express undertaking? There is no principle on which such a defense can be sustained. The obligation to keep safely the public money is absolute, without any condition, express or implied; and nothing but the payment of it, when required, can discharge the bond.

"Public policy requires that every depository of the public money should be held to a strict accountability. Not only that he should exercise the highest degree of vigilance, but that 'he should keep safely' the moneys which come to his hands. Any relaxation of this condition would open a door to frauds, which might be practiced with impunity."

The contract between appellant and the county was "that he would safely keep and faithfully disburse the school fund of Burnet County according to law." There is no limitation upon this liability in the law or in the bond; it expresses an absolute and unqualified obligation to keep the money safely. It does not limit his duty to the performance of such acts as a prudent man would do for the preservation of his own property; but he agrees absolutely to keep the money safely and to disburse it. The fact that the bank in which he made the deposit failed constitutes no defense to his liability. It was not the intention of the Legislature by amending article 867 to lessen the liability of the treasurer, but to provide additional safeguards against the unlawful use and misapplication of public money.

To the third question we answer, when the commissioners court examined the report of the appellant and found that he had not the school fund on hand, it was established that he had not safely kept the said school fund, and therefore there was a breach of his bond, and a right of action arose in favor of the county for the recovery and restoration of the school fund, which he had thus permitted to be lost.

The fourth question does not propound any proposition of law which can be said to be "the question in the case," but in broad terms calls upon this court to decide the whole case upon the facts stated. This is not in accordance with the statutes of this State, nor with the rules of this court governing such proceedings, wherefore, we do not answer that question.