NUECES COUNTY et al. v. GUSSETT et al.
(No. 6222.)

(Court of Civil Appeals of Texas. San Antonio. May 14, 1919. On Motion for Rehearing, June 21, 1919.)

1. COUNTIES ⊚⟐101(5)—ACTION ON COUNTY TREASURER'S BOND—JOINDER OF DRAINAGE DISTRICT.

In county's action on county treasurer's bond, where it was claimed by drainage district that portion of funds turned over by county treasurer to his successor belonged to district, drainage district and its commissioners and depositary were proper parties defendant.

2. PARTIES ⊚⟐25—MULTIFARIOUSNESS—CIRCUMSTANCES OF CASE.

As to joinder of defendants, no positive general rule can be formulated as to what may or may not constitute multifariousness; the question depending upon the circumstances of each particular case.

3. PARTIES ⊚⟐25—MULTIFARIOUSNESS.

The rights of all parties in the subject of litigation should be settled in one suit, where the introduction of parties defendant does not prejudice the rights of those who have already commenced the litigation.

4. JURY ⊚⟐136(3)—PEREMPTORY CHALLENGES —"PARTY."

Rev. St. 1911, art. 5198, giving "each party to a civil suit * * * six peremptory challenges," does not entitle each defendant, where there are a number of defendants against whom there is a general cause of action, but who have secondary and collateral issues among themselves, to six peremptory challenges; the word "party" not meaning a "person," and there being but two parties, notwithstanding the number of defendants, where the liability of each of the defendants depends on the same facts.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Party.]

5. APPEAL AND ERROR ⊚⟐1045(1)—REVIEW— REVERSIBLE ERROR.

In county's action against county treasurer and the sureties on his bonds, the giving of 30 peremptory challenges to the defendants, instead of only 6, on theory that each defendant was entitled to 6, constituted reversible error.

6. COUNTIES ⊚⟐158—CUSTOMS AND USAGES ⊚⟐8 — COUNTY TREASURER — PAYMENTS— STATUTES.

Rev. St. 1911, art. 1509, providing that county treasurer shall not pay out any money except in pursuance of certificate or warrant, gives treasurer no discretion to make payments without being authorized by certificate or warrant, and he is liable for so doing, regardless of custom whereby county treasurer paid claims without first obtaining warrants or certificates.

7. CUSTOMS AND USAGES ⊚⟐8—ILLEGALITY.

A custom or usage contrary to law is void.

8. ESTOPPEL ⊚⟐62(5) — STATES — OFFICERS — UNAUTHORIZED ACTS.

The state cannot be estopped by the unauthorized act of its officers.

Appeal from District Court, Nueces County; W. B. Hopkins, Judge.

Suit by Nueces County and others against H. D. C. Gussett and others. Judgment for defendants, and plaintiffs appeal. Reversed and remanded.

⊚⟐For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Jas. M. Taylor, of Corpus Christi, and Terrell & Terrell, of San Antonio, for appellants.

Dibrell & Mosheim, of Seguin, and Kleberg, Stayton & North, G. R. Scott, and Boone & Pope, all of Corpus Christi, for appellees.

FLY, C. J.   This suit was instituted by Nueces county and the county judge, county commissioners, and county treasurer against H. D. C. Gussett, Mrs. G. R. Scott, W. E. Pope and wife, Lucille S. Pope, Mrs. Josephine G. Reynolds, Ch. Weil, R. Givens, and John Jordt, alleging that Mrs. Scott was the widow of G. R. Scott, who had signed bonds given by Gussett as county treasurer, in 1910 and 1912, and Mrs. Pope, his daughter; that George J. Reynolds was also a surety on the same bonds, and also on one in 1915, and had died leaving Mrs. Josephine Reynolds, his widow, as his sole devisee and independent executrix. It was further alleged that the other sureties in 1910 were Weil, Givens, and Jordt; in 1912, Weil and Jordt; and in 1915, Givens, Jordt, and Weil. It was alleged that Gussett had failed and refused to make a proper accounting with Nueces county, and was indebted to it in the sum of $20,000. Afterwards an amended petition was filed, making W. J. Robertson, John R. Scott, Sarah Gocher, Nueces County Drainage District No. 2, the First State Bank of Robstown, and C. C. Brendle, George H. Peters, and L. T. Messer, as drainage commissioners of said district, parties to the suit. The drainage district claimed to own $11,466.48 placed by it in the hands of Gussett. The drainage district, at the instance of Gussett and his sureties, was dismissed from the suit. The cause was tried by jury upon special issues submitted by the court, and upon the responses judgment was rendered in favor of Gussett and the sureties on his bonds.

[1] The first assignment of error assails the action of the court in sustaining exceptions of appellees on the misjoinder of. the drainage district and its commissioners and depositary as parties defendant in the case. It is the claim of appellants that there was a shortage in the amounts turned over to his successor by Gussett of about $6,003.15, provided the sum of $11,466.48 is not the property of the drainage district, in which event the shortage of Gussett would be $17,469.63. Appellants wished the drainage district made a party in order to determine the shortage of Gussett. In other words, it was alleged that the drainage district was claiming that $11,466.48 of the $52,714.94 paid over by Gussett to his successor was the property of the drainage district, and that appellants are unable to determine how much the shortage of Gussett is, without a determination of the ownership of that part of the money claimed by the drainage district.

This contention seems to be reasonable, and not open to legitimate attack. It seems to be clear that a proper settlement of accounts between appellants and the ex-treasurer and his sureties cannot be had without a settlement of the question of how much money has been paid over to his successor by Gussett, and that cannot be determined until rival claims to the fund have been adjudicated. Suppose that appellants should recover $6,000 shortage from Gussett, and then the drainage district should sue the county and recover over $11,000 from it, either the county would be compelled to stand the loss, or another suit against Gussett and his sureties be instituted. The matter between the appellants, and the drainage district is one of essential and vital importance in the suit against Gussett. It is not a question of convenience, but of absolute necessity. As quoted by this court in the case of Kunz v. Ragsdale, 200 S. W. 269, "Every case must be governed by its own circumstances," and in this case, as in that, we are of opinion that the circumstances demand the retention of the drainage district in the suit, in order that one trial and one judgment will settle everything connected with the case.

[2, 3] No positive general rule can be formulated as to what may or may not constitute multifariousness, but the circumstances of each case must determine the matter. However, as held in the case of Skipwith v. Hurt, 94 Tex. 322, 60 S. W. 423:

"The general doctrine of our courts is that the rights of all parties in the subject of litigation may and should be settled in one suit, within the limitation that parties cannot be so introduced as to prejudice the rights of those who have already commenced the litigation."

It is not apparent how the retention of the drainage district in the suit could "prejudice the rights of those who have already commenced the litigation." Under the Texas system of prosecuting and defending suits, which is largely based on common sense and reason, one great desire is to avoid a multiplicity of suits, and to dispose, at one stroke, of every issue that can arise out of the subject. As was said as far back as Thomas v. Hill, 3 Tex. 270, the law abhors a multiplicity of suits, and effectually guards against such a consequence. This is the doctrine of the courts of Texas. Love v. Keowne, 58 Tex. 191; Cobb v. Barber, 92 Tex. 309, 47 S. W. 963; Mateer v. Cockrill, 18 Tex. Civ. App. 391, 45 S. W. 751; Mathonican v. Scott, 87 Tex. 396, 28 S. W. 1063; Harris v. Cain, 41 Tex. Civ. App. 139, 91 S. W. 866. We sustain the first assignment of error.

[4] The second assignment of error assails the action of the court in permitting 6 peremptory challenges of jurors to each set of sureties, thereby giving such sureties 30 challenges. There was in this case but one cause of action, and that was the shortage of Gussett in his accounts as treasurer of Nueces county. The law permitted a joinder

of the sureties for the different years, because. there was but one cause of action. The appellees were making a common fight against appellants on the main issue, which was the liability of Gussett, as treasurer, to the county. "Each party to a civil suit shall be entitled to six peremptory challenges" does not mean that, where a number of defendants have a general cause of action against them, each one shall be deemed a separate party, because they may have secondary and collateral issues among themselves, and each be entitled to, six peremptory challenges, as provided in article 5198, Revised Statutes. Jones v. Ford, 60 Tex. 127; Hargrave v. Vaughn, 82 Tex. 347, 18 S. W. 695; Wolf v. Perryman, 82 Tex. 112, 17 S. W. 772. As said by Chief Justice Stayton in the cited case of Hargrave v. Vaughn:

"We do not understand that by the word 'party' is meant 'person,' and that in a case in which there are more than one plaintiff or defendant to an action that each will be entitled to 6 peremptory challenges, but that when the issues to be tried between the plaintiffs and defendants are the same, that then * * * there are but two 'parties' to the action. The liability of each of the defendants depends on the same fact, though the extent of the liability of one may be greater than can be fixed on the other defendants."

That was said in a case where a partnership and its employé were sued for improperly compounding a medical prescription, thereby killing a child.

[5] In this case there were no issues to be settled among the defendants, but all they sought was to defeat the claim of appellants. They were to all intents and purposes one "party," and entitled to only 6 peremptory challenges, instead of 30 given them by the court. This was an error, which gave an advantage to appellees that would cause a reversal of the judgment. That it probably affected the result we think is apparent. The assignment is sustained.

The case of Screwmen's Benevolent Ass'n v. Smith, 70 Tex. 168, 7 S. W. 793, does not militate against the ruling herein that Gussett and his sureties were one party. That was a case of two suits, each against a different set of sureties, there being no question as to the principal being liable, in which it was clearly alleged that one set of sureties were liable for shortages for one term of office, and the other set of sureties for another term. The court held they could not be consolidated, but further held:

"It would seem, when actions have to be brought against two sets of sureties on official or like bonds, given by a principal and different sureties, to secure the faithful performance of duty by the principal, for different terms, the one succeeding the other, that one action against the principal and all the sureties ought to be permitted when the plaintiff is unable to state and prove clearly where a

misappropriation of funds occurred, and it may be that legislation upon this subject ought to be had."

In Skipwith v. Hurt, herein cited, two sets of sureties were sued, as indicated in the quotation from the case of Screwmen v. Smith, and it was said:

"All of the defendants were liable for the one subject-matter of the suit, the county's money in Skipwith's hands."

[6] In article 1509, Revised Statutes, it is provided:

"The county treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same; and, if such treasurer shall have any doubt of the legality or propriety of any order, decree, certificate or warrant presented to him for payment, he shall not pay the same, but shall make report thereof to the commissioners' court for their consideration and direction."

The language of the statute is plain and imperative, and presents no ground for construction. As showing the strict construction to be placed upon the statute, it was held in Denman v. Coffee, 42 Tex. Civ. App. 78, 91 S. W. 800, by the Court of Civil Appeals of the Third District, after quoting the statute:

"The county treasurer would not have been authorized to pay appellant's claim simply upon presentation to him of a certified copy of the orders of the commissioners' court, as such copies could not take the place of the warrants required to be issued by article 1104 [1149] of the Code of Criminal Procedure."

The article referred to requires the issuance of a draft to the sheriff on the treasurer. Not only is the treasurer commanded not to pay out except on a certificate or warrant from some officer authorized to issue the same, but in addition such are to. be made only as the commissioners' court may require and direct. Article 1505. In the face of the clear and unequivocal terms of the statute, the court, over the protests and objections of appellants, permitted several witnesses to testify that it was the custom for the treasurer of Nueces county to pay off claims without obtaining warrants or certificates for the same. The law places no such power in the hands of the county treasurer, and a custom based upon disregard and defiance of law should meet with scant consideration in courts of law. The treasurer is a ministerial officer invested with no discretion to pay off claims against the county unless authorized by an order of the commissioner's court, upon warrants or certificates signed by the officer authorized to issue them. He has discretion given to refuse payment of certain claims, but has none to pay any claim not evidenced as the law directs.

[7] It is the universal rule that a custom or usage contrary to law is void. Dwyer v. Railway, 69 Tex. 707, 7 S. W. 504; Railway v. Fagan, 72 Tex. 127, 9 S. W. 749, 2 L. R. A. 75, 13 Am. St. Rep. 776; Alexander Eccles Co. v. Munn (Ark.) 210 S. W. 626. The law does not authorize the treasurer to pay out the money of the county on a verbal request from the county judge or a commissioner, and he had no right to pay out money except as prescribed by statute. If the positive terms of the law can be avoided by proof of doing the very thing the law condemns, the whole matter of making such laws becomes a solemn farce, and the county has no protection against the unlawful appropriation of its funds. The county treasurer is absolutely responsible for the handling of funds of the county, and customs and diligence are no excuses for violation of the law. Wilson v. Wichita County, 67 Tex. 647, 4 S. W. 67; Poole v. Burnett County, 97 Tex. 77, 76 S. W. 425. The third, fourth and fifth assignments of error are sustained.

The sixth and seventh assignments of error are overruled.

The trial court permitted counsel to ask Gussett "if there is in fact a record shortage in your accounts, if you know how or in what manner that occurred," which was clearly improper. He at first answered the question, "No, sir; there is not any shortage," which his counsel stated was not sought by him. Then he was asked: "Do you know how and in what manner it occurred?" To that question he answered:

"It would have occurred in the manner I conducted the business, the way that I bought and paid for the feed and wood and coal that I bought for the benefit of the county."

The questions and answers were improperly allowed. The questions called for and obtained an expression of opinion of how his shortage occurred from Gussett. It offered no valid defense to the claim of appellants, but doubtless had its effect on the jury.

The only case coming to our notice which might seem to sustain the contention of appellees is not cited by them, but has been discovered by this court through the article in Ruling Case Law on "Public Officers," being the case of Flowers v. Logan County, 138 Ky. 59, 127 S. W. 512, 137 Am. St. Rep. 347. In that case it was shown that a court, probably similar to a commissioners' court, but called the "fiscal court" in Kentucky, from time to time entered orders appropriating gross sums, for road districts, for building bridges, and for paving the public square, and appointed an official denominated by the Court of Appeals of Kentucky as "Squire Flowers" to act as "commissioner" or "committee" to sell old material from the abandoned courthouse and to expend the money appropriated for the Russellville road district. The "Squire" sold the material and expended the money, and made due report of his action to the fiscal court, and his acts were approved. He was a member of the fiscal court, and the acts of that court were severely condemned by the Court of Appeals, as irregular and dangerous, and as giving opportunity for peculation and extravagances, but it was held that—

"Where the fiscal court and the taxpayers have stood by for many years and allowed the public money to be expended by that kind of proceeding, and it has actually been applied to the purposes for which it was raised and appropriated," the county would not be permitted to recover. "The vice in the proceeding was not in doing something not authorized by, or forbidden by, the law, but was doing that which was allowed in a manner not authorized by law. If the thing done had been illegal, or not warranted by law, however beneficial it might have been, the public ought not to be estopped to deny the validity of the expenditure; or, where the thing is authorized, but it is proposed to do it in an unauthorized manner, upon seasonable complaint those charged with doing the thing will be compelled to execute it as the law directs, and prohibited from doing it otherwise."

The only violation of law that appears in the Kentucky case was in employing a member of the court as supervisor of roads, then making him serve in a dual capacity, and in contravention of a law which forbade the members of the fiscal court from being interested in any contract or work for the county. In that case a direct order had been made by the fiscal court authorizing the expenditure by Flowers of certain appropriations.

In this case the only orders made by the commissioners' court were not direct, distinct appropriations, and only authorized Gussett to purchase oats and hay, "and that the county judge be authorized to issue warrants for the amounts when approved and checked by the [said] Gussett." That was an order to pay the amounts on warrants as required by law, and the evidence objected to failed to show that the amounts were paid on warrants. In the Kentucky case Flowers at least lived up to the orders of the fiscal court, but Gussett not only acted in defiance of law, but in defiance of the orders by which he seeks to excuse a violation of law. There was no pretense that the law requiring the county treasurer to pay only on warrants or certificates was obeyed, but he made the debts and then issued checks for the amount which were paid.

[8] It has been held in several states that an estoppel does not operate against a state or its assignee, and that it is clear that the state cannot be estopped by unauthorized acts of its officers. Bigelow on Estoppel, p. 372; United States v. Kilpatrick, 9 Wheat. 720, 6 L. Ed. 199. The same reasoning which

would protect the state from estoppel would protect a county. The Kentucky case is the only one we have encountered that holds that a county may be estopped, and that only under a peculiar state of facts, where the party sued had acted under direct orders of the county's governing court, paying accounts as directed by that court. This case fails to present such facts.

In the case of Saunders v. Hart, 57 Tex. 8, it was held that the doctrine of estoppel does not ordinarily apply to the state, and in Marsalis v. Garrison, 27 S. W. 929, it was held, after adverting to the ruling as to the state:

"It would follow, therefore, that such a principle could not be applied to a county when, as in a case such as here presented, it acts as a subdivision of the state, and in right of the sovereignty of the state."

It was further said, which is the rule in every case, that in no event could estoppel arise, unless the acts of the county induced the acts against which estoppel is claimed. The facts in this case fail to show that any acts were done by the county that would induce the county treasurer to violate, not only the statute, but the order of the commissioners' court. In the absence of estoppel, the evidence objected to could not be justified.

It has been held by Courts of Civil Appeals and the Supreme Court that the state cannot be estopped by the unauthorized acts of its officers. Railway v. State, 36 S. W. 111; Cameron v. State, 67 S. W. 348; State v. Land Co., 71 Tex. 252, 9 S. W. 130.

The judgment is reversed, and the cause remanded.

### On Motion for Rehearing.

A large part of the motion of appellees is devoted to an argument which amounts to a request that this court shall set aside a statute that is so plain that it would be a reflection upon the intelligence of any one holding an office to intimate that he could not understand it, and to set up in its stead a course of conduct adopted by the commissioners' court and the treasurer of the county, which was directly in the face of the statute. Article 1509 is plain and unequivocal in its terms, and they are so easy to be obeyed that no treasurer should ever deviate therefrom. It provides that—

"The county treasurer shall not pay any money out of the county treasury except in pursuance of a certificate or warrant from some officer authorized by law to issue the same."

This court cannot add to or subtract one thing from that law, and the treasurer, having time and again violated its provisions, must take the consequences.

No attempt was made to prove that the commissioners' court had passed directly on payments made by the treasurer. There was no evidence tending to show that, when money was paid out by the treasurer without a warrant or certificate, the commissioners' court recognized the validity of such payment and endeavored to legalize it, if such could be done. If by custom, or even by formal action, a commissioners' court can nullify an act of the Legislature, laws passed to protect the finances of a county from being expended in an unlawful manner then become farcical, and it is worse than folly for such laws to be passed.

The reports approved by the commissioners' court do not show that any money had been expended without warrants issued in compliance with the statute, and there is nothing to indicate that the court had any knowledge of any such expenditure.

The contention that the treasurer "complied with the requirements of the law and made his reports to the commissioners' court at each term, accompanied by proper vouchers," is not borne out by the record. The treasurer in effect admitted a shortage in his accounts.

In the cases of Walker v. Barnard, 8 Tex. Civ. App. 14, 27 S. W. 726, and Denman v. Coffee, 42 Tex. Civ. App. 78, 91 S. W. 800, it was explicitly held that an order of the commissioners' court cannot take the place of the certificate or warrant prescribed in the statute, and yet it is contended by appellees that the orders of an individual commissioner can set aside the statute. There is no merit in the motion of appellants, and it is overruled.

A motion by appellants seeks an explicit ruling on the sixth and seventh assignments, which were overruled by this court. They were overruled, because the court was of opinion that the law appropriate to the case had been given by the court, and that the issues submitted would not have been improved by giving the issues requested.