## PERRY'S ADMINISTRATOR v. G. W. SMITH.

An undated written contract between P. and certain attorneys stipulated that " when the title to the league of land lying on the Lavaca, claimed by the heirs of Hibbens, is cleared of all litigation made by said heirs," then the attorneys, " who have attended to the management of said suit, and who are still to continue to do so," should be entitled to an undivided fourth of the league. The plaintiff, claiming as assignee of the attorneys, sued P.'s administrator for specific performance, and for partition. The defendant answered that the attorneys failed to perform their part of the contract, and thereby forced defendant and his intestate to employ other counsel at an outlay of over $3100; that the original parties to the contract understood it to bind the attorneys to clear the land and title of all adverse claimants under the Hibbens title, which the attorneys failed to do, and thereby the defendant, besides the said outlays to counsel, was forced to buy out an adverse claimant at a further outlay of $500; and that the plaintiff, if entitled to recover at all, was liable for his proportion of these outlays. To these answers the plaintiff excepted, on the ground that they sought to vary the terms of the written contract. *Held*, that it was error to sustain the exceptions; that the defendant was entitled, by evidence *dehors* the instrument, to prove its date, explain and make certain its indefinite stipulations, and ascertain on what consideration, if any, it was based. *Held, further*, that the plaintiff, if entitled to recover, is bound to contribute to such necessary outlays as the defendant and his intestate had made for the protection and care of the land; and therefore it was error to sustain the exceptions and decree in favor of the plaintiff without contribution by him.

APPEAL from Colorado. Tried below before the Hon. L. Lindsay.

In seventh Texas Reports, 259, will be found the case of Howard v. Perry, involving the " Hibbens title " to the league of land referred to in the instrument sued on in this case. That suit resulted in establishing the title of Perry as against the Hibbens title and heirs, and the plaintiff in the present case claimed that by that result, his assignors, Jones & Rivers, became entitled to

an undivided fourth of the league, by virtue of their written contract with E. W. Perry, of which a sufficient abstract, for all practical purposes, is given in the head note.

The defendant admitted that the case of Howard v. Perry settled the naked question of title to the land, but insisted that it by no means "cleared it of all litigation" under the Hibbens title; averring, on the contrary, that his intestate and himself never succeeded, until many years after the determination of Howard v. Perry, in evicting from the land, by legal proceedings, the numerous parties who retained possession derived under the Hibbens title, but defended on pretenses not adjudicated in the suit in seventh Texas ; and he referred to the case of Ballard v. Perry, reported in twenty-eighth Texas, as one of the suits.  Such readers as are curious to learn the particulars of the protracted litigation thus generated, can have recourse to the volumes cited.

The opinion of the court in the present case, in connection with the abstract in the head note of the material allegations of the defendant's answers, suffices to indicate such facts as are involved in the rulings made.

*R. V. Cook*, for the appellant.—The general principles invoked by the plaintiff below, that written agreements, whether specialties or simple contracts, are not to be contradicted, varied or set aside by oral testimony, I cheerfully agree to be correct and sustained by the current of authorities ; but this general rule has a number of well established exceptions.

" Recitals in an instrument may be qualified or contradicted by extrinsic evidence, if the law of estoppel does not prevent.  The date of an instrument, or if there be no date, the time when it was to take effect, which may be other than the day of delivery ; or the amount of the consideration may be varied by testimony, and an instrument may be shown to be void or without legal existence or efficacy for the want of consideration, or for fraud, or duress, or

any incapacity of parties, or any illegality in the agreement.    In the same way extrinsic evidence may show a total discharge of the obligations of the contract, or a new agreement substituted for the former which is set aside," etc., etc. (Parsons on Con., vol. 2, 554, 5 Ed.; 1 Greenleaf on Ev., §§ 302, 304; Fleming v. Gilbert, 3 Johns, 528; Monroe v. Perkins, 9 Pickering, 298.)    The same effect, see Erwin v. Saunders, 1 Cowen, 250, where the court, after announcing a general rule, say:    "This rule, however, does not exclude parol evidence of fraud, or the want of or failure in consideration; nor the enlargement of the time for performance; or the waiver of performance of a written simple agreement."

".The rule in relation to extrinsic evidence prohibits the admission of oral testimony to 'contradict or vary the terms of a valid written contract.    Therefore there is nothing in this rule to prevent the introduction of such testimony for the purpose of explaining the contract.'"    (Parsons on Con., vol. 2, 557, 5 Ed., and cases there cited.)

Referring again to the fact that the parties now before the court were not privy to the original contract, I make one other quotation from the same distinguished author:

" Questions depending upon the construction or interpretation of a contract sometimes arise between third persons who had no privity or participation in the original contract and nothing to do with the language used in it.    In such cases, much of the reason which prohibits the introduction of extrinsic evidence fails, and with it the prohibition fails.    *    *    *    *    They may, therefore, show by extrinsic evidence what the agreement between the original parties, which purports to be expressed by the written contract, really was, so far as this is necessary to establish their actual rights and to do full justice between them."    (Vol. 2, 556, 557.)

Now the defendant below did not propose to do anything more than to explain the nature and character of the instrument of writing set forth by the plaintiff; and the explanation offered by

the defendant may be " distinctly derived from a fair and rational interpretation " of the words used in the instrument itself.

It was proposed, in the answers of the defendant to explain that the words " from all litigation made by the Hibbens heirs," were intended to mean that Jones & Rivers were to prosecute the legal proceedings to a successful termination, and not to cease their efforts in that behalf until the " Hibbens heirs," and those claiming under that title, were duly ousted by legal process. The ambiguous words certainly needed some explanation ; and the one offered is fair, rational and grammatical. I invoke the third of the the three rules laid down by Judge Parsons : " If the meaning of the instrument, by itself, is affected with uncertainty, the intention of the parties may be ascertained by extrinsic testimony, and this intention will be taken as the meaning of the parties expressed in the instrument, if it be a meaning which may be distinctly derived from a fair and rational interpretation of the words actually used." (Parsons on Contracts, vol. 2, 564, 5 Ed.)

So far, then, from the proposed explanation varying or contradicting the writing, it upholds and sustains it. Nor can it be denied but that the writing was very inartistically drawn. There lurk within it several ambiguities, which cannot be dispelled, unless resort is had to extrinsic, explanatory evidence. For example : the writing is without any date. How, then, are we to understand the words " have attended to said suit, and are still to continue to do so ?" What suit is referred to by the words " said suit ?" What individuals are referred to as " Hibbens's heirs ?" How could any surveyor ever find the land simply referred to as " lying on the Lavaca ?" And the words " is cleared of all litigation made by said heirs "---how, or in what sense, are we to understand them, unless we call to our aid the explanation offered by the appellant, or some equally consistent with their fair, grammatical and philological construction ? The plaintiff below felt the force of this and hence we find that he resorts, in his petition, to

a lengthy statement of facts, explanatory of the contract; all of which are *de hors* the writing offered by him, but without which he plainly supposed that the same could not be fully understood.

After explaining the contract, the defendant goes on to show, by proper averments, that there had been a failure of consideration upon the part of Jones & Rivers—not only a failure upon their part, but an absolute refusal by them to carry out the contract. Certainly it will not be seriously contended that the defendant below could not show a failure of consideration. (Paschal's Digest, article 228, note 289.)

*Hancock & West*, for the appellee.

Ogden, J.—We think this cause should be reversed because of the error of the court below in sustaining the plaintiff's exceptions to the answer and amended answers of defendant. The instrument sued on is without date, and in other respects vague and uncertain; and it was most certainly the right of either party, under proper pleadings, to have the instrument explained, or at least to be made certain by evidence outside of the instrument itself. It is claimed by appellant that on the face of the instrument it is not absolutely certain what suit Jones & Rivers had attended to, and were "still to continue to do so;" that the land referred to in the written instrument could not be determined without extrinsic explanatory evidence, and that there is no consideration for the agreement on the part of E. W. Perry, unless extrinsic evidence be admitted to show that the professional services of Jones & Rivers were the consideration, and that then it would be necessary to have explanatory evidence to show definitely what amount of professional services were intended by the contracting parties to be a full consideration for the one-fourth of the league of land.

There is another important question raised by the appellant's amended answer, which was stricken out by the rulings on the

demurrer.   The appellant, in his petition below, claims that by the decision of the Supreme Court in 1851, the title to said league of land was wholly cleared from all claims of the Hibben heirs, and that then "the said Jones & Rivers became absolutely entitled to the one equal undivided fourth of said league." If, therefore, Jones & Rivers, in 1851, became the owners of one undivided fourth of the land, then they would from that time become liable for a proportionate amount of all necessary cost and expenses in defending the title, possession and care of the whole league until a partition was had.   The defendant below claimed that his intestate had necessarily expended a large amount of money after 1851, in getting and maintaining possession of the league of land, that he might protect the title to the same; and yet the court struck out this portion of the answer on demurrer. We consider the ruling in this respect erroneous, for if appellant or his assignors were the owners, or "were absolutely entitled to one fourth of the league," then they or he should be held responsible for all necessary expense in protecting it.

The defendant below also claimed that Jones & Rivers had failed to perform their portion of the original contract, and that therefore their assignee could not insist upon a specific performance. We think this a question of fact, which should have been submitted to a jury, or to the court acting in the stead of a jury. And without expressing any opinion in relation to the merits of this cause, yet we think substantial justice would more likely be obtained by an investigation of the facts in relation to the real intent of the instrument sued on, and the respective rights and liabilities of the parties since the execution of that instrument.

The judgment is therefore reversed and the cause remanded.

                                        Reversed and remanded.