## J. W. MATEER ET AL. v. M. COCKRILL ET AL.

Delivered March 17, 1898.

1. Contribution—Parties.

To enforce contribution between joint obligors where some of them have discharged the joint obligation without assistance from the others, all persons who have a legal or beneficial interest in the subject matter of the suit should be made parties, either plaintiffs or defendants.

2. Same—Misjoinder—Multifariousness.

A bill in equity by joint obligors to enforce contribution from co-obligors for sums paid at different times to various persons by the plaintiffs in accordance with the terms of a guaranty signed by the parties, is not demurrable for a misjoinder of causes of action or bad for multifariousness.

3. Same—Amendment—New Cause of Action—Limitations.

In a suit to enforce contribution between joint obligors the amended petition does not set up a new cause of action where both the original and amended petitions declare upon the implied promise of the guarantors between themselves to pay to each any sum he might pay in discharge of their joint contract in excess of his subscription, although upon a former trial it was erroneously held that the suit was upon a guaranty, and that the four years and not the two years bar of limitation was applicable to the case.

4. Same—Parties.

Guarantors of the performance of a contract made between a citizens' executive committee and a railroad company to secure a right of way for it through the county free of cost, in an action to enforce contribution from coguarantors for sums paid by the plaintiffs, may properly make one a party to the action to whom they have agreed to pay such damages for the grant of a right of way as might be agreed upon or adjudged him.

**5. Same—Same—Dismissal Not Voluntary.**

In a suit by members of a committee which guaranteed the performance of a contract between a citizens' executive committee and a railroad company to furnish the latter a free right of way, in which it is sought to enforce contribution from coguarantors, the latter can not escape liability for sums paid by the plaintiffs in the purchase of a depot site on the ground that the plaintiffs have dismissed their suit against the executive committee of which the guaranty committee formed a part, when the dismissal was not voluntary.

**6. Same—Guarantor.**

A judgment in favor of a guarantor in an action by him and others who had subscribed sums in aid of a railroad company to enforce contribution from coguarantors is not erroneous, although the jury found that he had paid a little less than his subscription, when the guarantors were indebted to the defendant for a sum adjudged him as compensation for a right of way and the judgment is for his proportionate share of that sum, less the deficiency in his subscription.

**7. Same—Right of Action Arises, When.**

A right of action for contribution by members of a committee who have subscribed sums in aid of a railroad company and guaranteed a free right of way does not arise upon the advancement of money or the assumption of liability by any of them in excess of his subscription in furtherance of the common purpose, but only when subscriptions have been collected and paid out, the road has been obtained, and the railroad company has been settled with.

**8. Same—Extent of Recovery.**

The members of an executive committee who have paid sums in aid of a railroad company, although not in excess of the amount subscribed by them, may seek contribution from other members of the committee after it has been released by the railroad company from payment of the balance, when they paid such amounts under the belief that the full sum would be demanded.

APPEAL from Fayette. Tried below before Hon. H. TEICHMULLER.

*L. W. Moore* and *J. T. Duncan*, for appellants.

*Brown & Lane*, for appellees.

PLEASANTS, ASSOCIATE JUSTICE.—This is the second appeal to this court, from a judgment rendered against appellants in this suit, by the District Court of Fayette County. Upon the former appeal the judgment of the trial court was affirmed by this court in an opinion holding with the lower court, that the plaintiffs' cause of action as set up in their petition would not be barred until the expiration of four years from its inception. But upon a writ of error to the Supreme Court, it held that the bar of two years, and not that of four, was applicable to the case presented in the petition, and reversed the judgment of this and the trial court and remanded the case. 88 Texas, 428.

The material facts of the case, as we deduce from the statements of appellants and appellees, are substantially as follows: About May 10, 1887, the people of Flatonia and its vicinity in mass meeting entered into a compact for the purpose of inducing the San Antonio and Aransas Pass Railway Company to build the branch of their road, then being constructed from Yoakum to Waco, through the town of Flatonia; that the parties to this suit were parties to that compact, and that said meeting appointed an executive committee to negotiate with the railway com-

pany, with full power to accomplish, if practicable, the object of the compact. The committee consisted of twenty persons, with power to increase its number, and seven of its members constituted a quorum. It was contemplated that the money necessary to secure the road should be raised by subscriptions made by the members of the meeting and other citizens of the county of Fayette. The executive committee appointed several of its members a special committee to confer with the railway company, and the committee effected an agreement with the company for the construction of its road to Flatonia; the consideration demanded by the company and accepted by the executive committee was a bonus of $6000 to be paid when the road reached Flatonia, depot grounds in the town, and a right of way through the county of Fayette along such line as should be selected by the company. This contract was reduced to writing and signed by thirteen members of the executive committee, and those signing the contract are designated in the brief of counsel as the guarantee committee. By the terms of this contract these members of the executive committee who signed the contract assumed a personal liability to the company. The plaintiffs and all of the defendants, with one exception, were members of the executive committee, and signed the contract made by the committee with the company. The executive committee was ultimately increased to thirty-three members. By a resolution passed in one of the meetings of the executive committee, three of their number, to wit, J. M. Harrison, M. Cockrill, and J. E. Faires, were authorized to bind the committee for the payment of right of way, and were instructed to execute notes for this purpose to parties demanding to be compensated for granting right of way over their lands. This power was given to this committee to be executed by all or any of them. The defendant Faires never executed any such note; Harrison and Cockrill executed two notes, one for $450 to W. S. Robson, guardian of the estate of Karns minors, and one for $300 to the representative of the estate of T. W. Pierce. These notes were given for depot grounds in the town of Flatonia, and dated September 19 and 30, 1887, respectively, and were payable twelve months after date, and they were paid by the guarantee committee, that is to say, those members of that committee who bring this suit. The one for $450 was paid, interest and principal, January 4, 1887, and the other note for $300 was paid, with interest, on April 5, 1892. Plaintiff Harrison paid a judgment which had been obtained by K. M. Rose for the right of way over his land, and payment was made on May 1, 1893, and the amount of the judgment was $228. The four plaintiffs, Cockrill, Harrison, Lane, and Arnim, paid on a judgment in favor of T. C. Moore, rendered for costs of right of way, $2476.56; this payment was made on the 12th day of May, 1890, Cockrill and Harrison each paying one-third of the sum, and Lane and Arnim paying jointly the other third. Lane and Arnim, in addition to above payment, made several small payments out of their joint funds, aggregating about $110.75; some of these payments were made in 1891 and some in

1892, and Lane paid in execution of the guarantee contract, out of his own individual funds, $100; a portion of this was paid in 1887 and a portion in 1891. On the 20th day of December, 1887, some $2830.40 were paid on the bonus guaranteed the road, leaving a balance thereon, on August 13, 1891, with 8 per cent interest from December 20, 1887, of $3169.60. The railway company complied with its contract, and in 1891 its property was placed in the hands of a receiver; and through the efforts of Lane and other members of the guarantee committee, a decree of the District Court of Bexar County, in which court the receivership was pending, was obtained, authorizing the receivers, upon the conditions stipulated, to release the guarantee committee from their obligation to make good the balance due the railway company. The decree authorized the release upon the condition that the parties bound for the bonus should deliver deeds conveying to the San Antonio & Aransas Pass Railway Company the right of way and depot grounds in Fayette County. To comply with this condition, the plaintiffs had to assume to pay to Leitenberg such sum as might thereafter be agreed on, or judicially determined, to be a fair compensation to him for conceding right of way across his lands to the company; and that this compensation might be determined judicially, he was made a party defendant to the suit. Not until some time in September, 1891, was the release executed by the receivers, though the contract to release was made on the 13th day of August of that year, the receivers refusing to deliver the release until deed of conveyance was delivered conveying right of way through Leitenberg's lands. This suit was instituted in April, 1893, and all of the members of the executive committee were made defendants, on the first trial of the cause, in the court below. The court held that the plaintiffs could only recover from their co-obligors on the guarantee given the company, and when the cause was remanded by the Supreme Court, the plaintiffs, with the permission of the court, dismissed as to all of the executive committee who did not sign the guarantee, and they also dismissed as to several who had, one of whom had, in the interval between the first and second trials, died, and the others who were dismissed were shown to be insolvent. The petitioners prayed for judgment for each of them, as against the defendants, who were their co-obligors on the guaranty, for the amount paid by them severally in excess of his subscriptions; and they averred that until they had secured a release from the payment of the balance of the bonus due the company under the contract made with it by the executive committee, it was not possible to ascertain what was the excess, if any, of the payments made by any one of them over the sum for which he was bound. The petition also prayed the court to determine what should be the compensation of the defendant Leitenberg for the right of way granted by him to the railway, and that he have judgment for such sum against plaintiffs, and against the other defendants, the joint obligors with plaintiffs. Upon trial of the cause, verdict and judgment were rendered for plaintiffs and for Leitenberg in accordance with prayer of the petition, and their mo-

tion for new trial being overruled, defendant Leitenberg excepted and appealed to this court.

Appellants have assigned many errors, but several of them will not be discussed; as the disposition we make of the others render it unnecessary to do so. The first assignment of error is:

"The court erred in overruling the defendants' plea in abatement, predicated upon the misjoinder of the parties plaintiff and defendant, and misjoinder of causes of action;" and the second assignment of error is: "The court erred in overruling defendants' motion in arrest of judgment." These assignments are jointly presented in appellants' brief for our consideration. Did the common law system of pleading apply to the case presented by the petition of appellees, the assignments would doubtless be well taken; but that system has never been adopted by the Legislature of this State, and those rules of pleading have been recognized and enforced by our courts to a limited extent only. Our rules of pleading are very analogous to those which obtain in the courts of equity of England and of the United States. The general rule, as to the joinder of parties, both in this State and in the courts of equity is, that in case of joint interests, joint obligations, and contracts, and joint claims, duties, and liabilities, all the joint owners, joint contractors, and others having a community interest in duties, claims, or liabilities who may be affected by the decree, should be made parties to the suit; the rule is often more succinctly stated thus: "All persons who have a legal or beneficial interest in the subject matter of the suit should be made parties, either plaintiffs or defendants." The subject matter of this suit is the enforcement of contribution between joint obligors, where some of the obligors have discharged the joint obligation, without assistance from the others. The rule that all who are interested in the subject matter of the suit must be parties, has its origin in considerations of justice and convenience for all concerned; and has for its object the prevention of circuity of action and the multiplicity of suits. We are of the opinion that there is no misjoinder of parties in this suit. Story's Eq. Plead., secs. 159, 162, 169.

It was only courts of equity originally which enforced contribution between joint obligors, and while such relief is now administered by courts of law, such relief is still a subject of equity jurisdiction. Such being the case, equity pleadings are specially applicable to this case. And in equity a bill is not demurrable because the subject matter of litigation might be made the occasion of numerous suits at law; for one ground of exclusive equity jurisdiction is the prevention of a multiplicity of suits. Thus the very thing which the appellants insist should have been done by the appellees, equity condemns. We do not think there was a misjoinder of actions by the plaintiffs, nor that their petition should be held bad for mutifariousness. Story's Eq. Plead., secs. 284, and note; Clegg v. Varnell, 18 Texas, 294; Craddock v. Bergen, 5 Texas, 275. Multifariousness is an objection to a petition which seems

not generally to have been considered by our courts with much favor or liberality.

If we are correct in our conclusions as to the first assignment of error, the second assignment can not be sustained.

The third assignment is, that the court erred in overruling defendants' plea to the jurisdiction of the court. Our disposition of the first assignment makes it unnecessary to discuss the third; it is necessarily without merit, if there was no misjoinder of parties to the suit and the petition was not bad for misjoinder of actions or multifariousness.

The tenth assignment is not well taken. Both the original and the amended petition stated the facts, upon which they based their right for contribution against the defendants, and it is to the averments of the petition, or the statement of facts therein made, that we must look, and not to the relief prayed for, to determine what the plaintiffs' cause of action is. In our judgment, the amended petition did not set up a new cause of action. Boyd v. Beville, 44 S. W. Rep., 287. The cause of action as set out in both the original and amended petitions was the implied promise of the guarantors between themselves to pay to each any sum he might pay in discharge of their joint contract with the railway company in excess of his subscription to the fund necessary to secure the railroad; and the fact that the lower court and this court erroneously held that the suit was upon the guarantee, and that consequently the four years, and not the two years, bar of limitation was applicable to the case, did not change or in any way alter the cause of action. Such ruling only declared the time in which the cause of action must be sued on.

The eighth assignment made by appellants is, "the court erred in not sustaining the defendants' special exception number 9, relative to the making of H. Leitenberg a party to the suit, when the pleadings show that the plaintiffs had assumed all responsibility to said Leitenberg." The plaintiffs and the defendants had guaranteed the performance of the contract between the executive committee and the railway company, which bound the committee to secure to the company, free of cost to it, a right of way for its road through the county, and the contract made with Leitenberg was that he would deed to the company the right of way, and the plaintiffs would pay him such damages as might be agreed upon, or might be judicially determined; and these damages not having been agreed upon, it was proper that Leitenberg should be a party to the suit brought by the plaintiffs against the defendants for the purpose of determining the sums or amounts which plaintiffs had either paid or obligated themselves to pay, in performance of the contract with the railway company, in excess of their subscriptions to the railway fund, and for compelling payments of such sums by defendants. The contract with Leitenberg was in furtherance of the common enterprise of plaintiffs and defendants, and if the contract was reasonable and just, defendants are bound both in law and in good conscience to pay their proportional share of the damages awarded to Leitenberg. This contract was made before the railway company released the execu-

tive committee, including both the plaintiffs and the defendants to this suit, from the payment of the balance due upon the bonus of $6000 contracted to be paid to the company; and the execution of the deed by Leitenberg conveying the right of way was made a condition precedent by the railway company to the execution and delivery by them of the release. It can not therefore be said that the contract was matter purely between the plaintiffs and Leitenberg; plaintiffs in making the contract were but doing what, as we have said, they and the defendants were jointly bound to do, to secure a right of way through the county to the railway. The court correctly refused to entertain defendants' special exception number 9.

The twenty-first assignment of error assails the fourth section of the judgment, which gave judgment for the plaintiff Lane, on the ground that the jury found that Lane had not paid more than his subscription, but less by $1.39. While it is true that the jury did so find, it is also true that they found that each of the plaintiffs were indebted to defendant Leitenberg, for right of way through his lands, the sum of $25; and the judgment for Lane against the defendants, the appellants here, was for the difference between this sum, $25, and the sum of $1.39, found by the jury as still due from Lane on his subscription; and the judgment against Lane in favor of defendant Leitenberg was for $25. We conclude, therefore, that the judgment of the court in its several sections, and in its entirety as well, is in conformity to the verdict, and is supported thereby.

The twelfth assignment of error assails the refusal of the court to instruct the jury, at the request of appellants, that the notes executed by Cockrill and Harrison, at the request of the executive committee, in payment of depot grounds, and which notes, it was declared by resolution of the executive committee, should be paid by subscription, and for their payment the committee should be responsible, were not debts of the defendants and they should not be charged with payment of any portion of said notes. There was no error in the refusal of such instruction to the jury. In support of this assignment, it is said by counsel that the debts evidenced by these notes were the debts of the executive committee, and the plaintiffs having dismissed their suits against the committee, should not recover of the guarantee committee; because to permit such recovery would be to allow the plaintiffs to increase the burden of the appellants, since they and the plaintiffs were only an integral part of the executive committee. But the dismissal of their suits against the executive committee was not voluntary on the part of the plaintiffs; the dismissal was after the court had decided that the plaintiffs could not recover contribution of the executive committee; and to this ruling the appellants made no objection, so far as we are advised; and if such action of the lower court was to their injury, they should have excepted and presented the question to this court. But apart from the question whether or not the other members of the executive committee might or might not be held liable for contribution as to these notes, the notes

being for the price of the depot grounds, their payment was in part performance of the contract which the plaintiffs and appellants had guaranteed, and it is therefore immaterial whether the notes were or were not executed by Cockrill and Harrison at the request of the executive committee, with the assurance from the committee that its members would be responsible for the debts evidenced by the notes. The guarantors and the other members of the executive committee expected, doubtless, to pay these notes with moneys obtained from subscriptions by the citizens of the town of Flatonia and the county of Fayette; but when that resource failed, all debts or liabilities necessarily incurred by the executive committee or any of the members in fulfillment of the contract with the railway company became the debts and liabilities of the guarantee committee.

Under their nineteenth assignment, appellants make this proposition: that inasmuch as the plaintiffs had not paid more than what, under their subscriptions, they were bound to pay, when the railway company executed the release to the executive committee for the balance due on the promised bonus to the railway, appellants are not liable to appellees in any sense. This proposition can not be maintained, because it is at variance with the essential principles of equity. The charge of the court we have examined, and we find nothing in it of which the appellants can complain, unless the rule given the jury, by which they were to determine whether or not any of the sums sued for were barred by the statute of limitations of two years, is erroneous. There was evidence on part of plaintiffs that it was not possible for them to determine, until the release was obtained from the company, whether the payments made by them in performance of the contracts with the railway company exceeded the sums which they had severally subscribed. The release was executed and agreed upon in August, 1891, but not delivered until late in September of that year, and the suit was instituted in April, 1893. Upon this evidence the jury were instructed as follows:

"For the purpose of determining when said cause or causes of action, if any, did occur, you will consider the time the payments were made by the plaintiffs, and when in view of all circumstances they could definitely ascertain and determine to what extent their payments exceeded their 'subscriptions,' and how much their co-obligors were liable to contribute to reimburse them. The limitations began to run against plaintiffs from the time they had a right to sue, that is, from the time the exact liability of defendants to contribute could be definitely ascertained. If you find from the evidence that the exact liability of the plaintiffs and defendants could not be ascertained until the terms of the contract were performed, and the conclusions of the transactions growing out of it, the time is to be computed from such date, in order to determine whether the defense of limitation is available or not."

The only issue presented by the record about which we have entertained any doubt is the use of limitation; and upon reflection, we have reached the conclusion that under the circumstances of this case no

cause of action accrued to any one of the guarantors as to the others until the release was obtained from the railway company. The appellees and the appellants, and other citizens of Fayette County, agreed if it were practicable, by their united efforts, to induce the San Antonio & Aransas Pass Railway Company to construct the Waco branch of its road through the county of Fayette via the town of Flatonia; and to this end resolutions were passed, committees were appointed, subscriptions of money were solicited and obtained, and negotiations commenced with the railway company, which resulted in a contract by which the company undertook, for sepcified considerations, to construct their road through the town and county; and this contract had to be guaranteed by responsible individuals; and this guarantee was given by thirteen of the citizens, including the appellants and appellees.

We think it was not in contemplation of the parties who gave this guarantee, that so soon as any one of them might advance money, or assume a personal liability, however small the amount, in furtherance of their common purpose, and such sum so advanced or liability assumed was in excess of what he had subscribed, such grantor would have a cause of action against each of his coguarantors; but that the understanding of the guarantors was, that when the subscriptions were all collected and paid out, and the road was obtained, and the railway company settled with, then, and not till then, should there be any adjustment of equities between them. If such was not the understanding of the parties, they could not have expected to discharge the contract with the company with moneys raised by subscriptions from those interested in securing the construction of the road through the town and county, the purpose of all who participated in the several railroad meetings, as declared by the resolutions of these meetings. We think the duties and liabilities of these guarantors as between themselves are not in all respects the same as those existing between the guarantors of a note or bond for payment of definite sums of money upon default of the payor or obligor; payment in such case by a guarantor is under compulsion by the payee or obligee. But in this case the appellee who advanced money or assumed liabilities in excess of his subscription did not do so under compulsion by the railway company, or in any settlement with the company; but the advancement was made, or the liability assumed, voluntarily and for the accomplishment of the object upon which he, his co-obligors, and other colaborers were bent—the location, construction, and completion of the railroad. If we are correct in our conclusion as to when the plaintiff's cause of action occurred, then there is no error in the charge of the court of which the appellants can complain; nor did the court err in refusing any one of the charges requested by appellants. But if we are in error, in the opinion above expressed, as to when the plaintiffs' cause of action accrued, as to the moneys paid or liabilities assumed in excess of what they were bound for under the joint obligation of plaintiffs and appellants, still we think, under the statement made by appellants in their brief, the plaintiffs had a cause

of action which clearly was not barred at the institution of this suit. Counsel say in their brief, and we may assume the statement to be correct, that when the railway company released the executive committee, the balance due it under the contract between the committee and the railway the plaintiffs had paid about $3800, and that this sum would have been about the part due from plaintiffs had the railway demanded payment of the entire bonus promised. This being so, the release itself gave plaintiffs a right to demand contribution from appellants for payments made by them under the belief that the whole amount due the railway would be demanded, such payments being in excess of what was their part of the debt actually demanded by the railway.

What we have said on the question of limitation, and in discussing several of the assignments, renders it unnecessary to discuss the remaining ones. The judgment is affirmed.

*Affirmed.*

Writ of error refused.