### BOOKER v. CROCKER.

(Circuit Court of Appeals, Eighth Circuit. July 28, 1904.)

No. 2,020.

1. MORTGAGE—CO-BONDHOLDERS' PURCHASE OF LIENS—CONTRIBUTION.

One of several holders of bonds secured by a common mortgage, who purchases superior liens upon or titles to the mortgaged property, takes them in trust for his co-bondholders upon condition that within a reasonable time after they receive notice of his purchases they contribute to him their proportionate shares of the amounts he paid for them. A community of interest in a common title or security involves a mutual obligation not to impair it.

2. SAME—PROPORTIONATE SHARE MEASURED BY PAR VALUE OF BONDS.

The proportionate share of each bondholder in the liens purchased and in the expenses thereof is measured by the par value of the bonds which he holds, and not by the amount he paid for them.

3. SAME—ONE WHO CONTRIBUTES, SHARES IN LIENS OR TITLES UPON OTHER PROPERTY PURCHASED TO PROTECT COMMON SECURITY.

Where the liens or titles purchased to protect the common security also cover other property not subject to the common mortgage, a bondholder who contributes his share of the expenses of their purchase acquires a like share in the liens or titles upon property thus purchased which is not subject to the mortgage.

(Syllabus by the Court.)

Appeal from the Circuit Court of the United States for the District of South Dakota.

Harris Richardson, for appellant.

J. W. Boyce (R. H. Warren, C. O. Bailey, and J. H. Voorhees, on the brief), for appellee.

Before SANBORN, VAN DEVANTER, and HOOK, Circuit Judges.

SANBORN, Circuit Judge. In this case the complainant below, John Lee Booker, has appealed from a decree in his favor which secures to him 6 $^{47}/_{1000}$ per cent. of 200 acres of land near the city of Sioux Falls, in the state of South Dakota, upon condition that he pays to the defendant, Charles T. Crocker, $4,428.29 and interest within 60 days from the date of the decree. This decree also quiets the title to this land in the defendant if the complainant fails to make this payment.

On May 11, 1896, a mortgage was made upon this tract of land to secure the payment of 400 bonds of $1,000 each. On October 1, 1897, the defendant, Crocker, loaned to the mortgagor $48,168.69, and took its note secured by 145 of these bonds. The bonds were afterwards sold under the pledge, and purchased by him for about 25 per cent. of their par value. He acquired other bonds, some at this rate and perhaps others at different rates, until he held bonds of the par value of $357,300. Booker, the complainant, purchased 23 bonds secured by this mortgage in the month of January, 1897, and paid for them about their par value. In this way each of these parties came to have bonds secured by the same mortgage after October 1, 1897. Subsequent to this date Crocker purchased various liens upon the mortgaged property which were superior to the lien of the mortgage, and he paid taxes, premiums on insurance, and other expenses for the purpose of preserving and protecting the security for the bonds, and the complainant recovered the decree in this case upon the ground that there was such a fiduciary relation between him and the defendant that he was entitled to share in the benefits which Crocker secured by the purchase of the superior liens for the purpose of protecting their common security.

Community of interest in a common title or security implies a mutual obligation not to impair it. It creates such a relation of trust and confidence that it is inequitable to permit one of the parties in interest to do anything to the prejudice of others, and when one of them obtains superior titles or liens he holds them in trust for the benefit of all who share in the common title or security, and who, within a reasonable time after notice of his purchase, contribute their share of his necessary expenditures. The complainant and the defendant were co-cestuis que trust under the trust deed to the International Trust Company, which constitutes the mortgage. They were co-bondholders secured pro rata by the same mortgage upon the same property, and prior liens upon or superior titles to this common property purchased by either vested in him in trust for both. Jackson v. Ludeling, 21 Wall. 616, 622, 22 L. Ed. 492; Lloyd v. Chesapeake, O. & S. W. R. Co. (C. C.) 65 Fed. 351, 357; Rothwell v. Dewees, 2 Black, 613, 619, 17 L. Ed. 309; Van Horne v. Fonda, 5 Johns. Ch. 388, 407; Moore v. Ware, 38 Me. 496, 498; Horton v. Maffitt, 14 Minn. 289, 292 (Gil. 216), 100 Am. Dec. 222; Funk v. McReynolds' Adm'rs, 33 Ill. 481, 497; Gossom v. Donaldson, 18 B. Mon. 230, 238, 68 Am. Dec. 723. Neither this principle nor the general equity of the decree is challenged by either of the parties to this suit. The defendant has taken no cross-appeal, and has thereby conceded, for the purpose of the hearing in this court, that the parties were co-cestuis que trust under the mortgage when the defendant

purchased the prior liens, and that he took them in trust for his co-bondholders. Guarantee Co. of North America v. Phenix Ins. Co., 59 C. C. A. 376, 378, 379, 124 Fed. 170, 172, 173. The appellant admits the facts and the law upon which the decree is founded, but objects to certain minor details of it. We turn to the consideration of his objections.

Under the principle of equity to which reference has been made the complainant was required to pay his due proportion of all the moneys which the defendant had necessarily expended to protect and preserve the common security. On September 22, 1898, he paid $3,850 for the lien by judgment of Pettigrew & Tate, and in July, 1898, he paid $5,600 for the lien by contract of the Fred W. Wolf Company. The decree conditions the recovery of the complainant with the repayment by him to the defendant of his proportionate share of the amounts which the latter expended in making these purchases. This requirement is specified as error because the parties made an agreement on July 9, 1901, which relates to this subject. That agreement was made under these circumstances: There was a mechanic's lien upon 360 acres of land, 160 acres of which were covered by this mortgage, while 200 acres were free from it. That lien was anterior in time and superior in equity to the lien of the mortgage, and a judgment had been rendered upon it. On July 30, 1900, the 360 acres were sold under this judgment to the defendant, Crocker, in a single tract, for $36,357.50. A year was allowed for a redemption from this sale by the statutes of the state of South Dakota. As the end of this year was approaching, and on July 9, 1901, Crocker made a written agreement with the complainant that he would "hold the title to the two hundred (200) acres of land of the Northwestern Packing Company at Sioux Falls, S. D., together with the plant thereon, bid off by me at sale on foreclosure of mechanic's lien, in trust for the said Booker and myself as bondholders under the bonds secured by the trust deed given to the International Trust Company of Boston by said packing company, the said Booker to have a right to his pro rata interest in said lien and any title to said property which may be acquired thereby upon the payment to me at any time before the right to redeem from the foreclosure of said trust deed shall expire of his pro rata share of the sum bid by me upon the sale upon the foreclosure of said mechanic's lien, with interest thereon at the rate of seven per cent. per annum, the amount bid on such sale to be pro rated between us according to our respective holdings of the bonds secured by said trust deed." The bill in this suit counted chiefly upon this agreement, and it was filed for the purpose of enforcing the trust declared by it. This declaration of trust or contract was assailed by the defendant on various grounds; among others, that it was unilateral, that it was without consideration, and that it contained no description of the lands to be affected by it. The court below held the contract invalid, refused to limit the payments required of the complainant to his share of the amount bid by the defendant at the sale under the mechanic's lien, and conditioned his recovery by the payment of his share of all the expenditures necessarily made by Crocker to protect the common security. This was a just and equitable ruling, and it ought not to be disturbed on account of

the terms of this contract. Laying aside the other objections that it was without consideration and that it was unilateral, it is sufficient to condemn it that it contained no definite description of the 200 acres, which, by its terms, Crocker agreed to hold in trust for himself and the complainant. The description in the agreement is of the "two hundred (200) acres of the Northwestern Packing Company at Sioux Falls, S. D., together with the plant thereon, bid off by me [Crocker] at sale on foreclosure of mechanic's lien." But the fact is that he bid off 360 acres in one lot at the sale, so that the description of the 200 acres which he bid off fails to point out what particular 200 acres of the 360 it was intended to describe. It reads that the land it refers to is the 200 acres on which the plant is situated. But the fact is that the plant is situated on 160 acres, and the agreement fails to disclose what 40 acres is to be added to the 160 acres upon which the plant is situated to make the 200. It provides that the complainant shall receive the pro rata share of the mechanic's lien and title to the 200 acres which he has in the mortgage securing his bonds. It would be a natural inference that the lands here described consisted of the 200 acres covered by the mortgage, if the mortgage covered 200 acres of the 360 acres bid off at the sale. But the mortgage covers only 160 acres of the 360 sold under the mechanic's lien, while it includes 40 acres that were not covered by the mechanic's lien, or included in the sale under it. The description of the 200 acres in the contract of July 9, 1901, is not certain, and it has not been made certain by the evidence in the record in hand. It is too indefinite to found a decree upon, and the court rightly based the relief it granted upon the fiduciary relation of the parties.

Another specification of error is that the court determined the proportionate interest of the parties in the lien of the mortgage and their proportionate shares of the necessary expenditures made to protect it by the par value of the bonds which they held, while it should have determined them by the respective amounts which they paid for their bonds. But there was no fiduciary relation between the parties before they bought their bonds. They occupied no such relation in their purchases of bonds, and hence were entitled to no accounting each with the other on that account. If all the bonds specified in the mortgage had been issued, each bond would have brought to its purchaser $1/400$ of the common security, whether he paid $1 or $100 for it, because the benefits and the proceeds of the mortgaged property were pledged to secure each of the 400 bonds pro rata. The price at which these parties bought their bonds was not, therefore, material, and their respective interests and liabilities were rightly measured by the par value of the bonds they held. Jackson v. Ludeling, 21 Wall. 622, 22 L. Ed. 492.

The next objection to the decree is that, while it requires the complainant to pay $6\ ^{47}/_{1000}$ per cent. of the amount paid by Crocker for the Pettigrew & Tate judgment and for the title procured at the sale under the judgment upon the mechanic's lien, it secured to him a share in the 200 acres covered by the mortgage only, while these liens attached to other lands which were not described in the mortgage. The objection must be sustained. When one of those who have a community of interest in a common title or security purchases

a prior lien .or title to protect it, he holds the entire lien or title in trust for all who share with him the community of interest in the common subject. When one of these contributes his full share of the amount expended to make the purchase, he thereby becomes entitled to a like share in all the benefits of the liens or titles purchased. If they cover both the property in which the parties have a community of interest and other property in which they were not before interested, he who contributes his share after the purchase is as much entitled to his share in the lien upon the outside property as he who originally made the purchase. The complainant is entitled upon payment of his share of the expenses of purchasing the title under the mechanic's lien and the lien of Pettigrew & Tate to all the benefits derived from those purchases, including those derived from the property that is not covered by the mortgage, as well as those derived from that property. He must, however, as a condition of this measure of relief, pay his proportionate share of the expenses which the defendant has paid, if any, to perfect these liens and titles upon the lands not described in the mortgage, and to preserve the property to which they attach.

There is another objection of the same nature which cannot be sustained. It is that the complainant is entitled to a share of a mortgage of $150,000 which was given to Crocker by the packing company on December 20, 1897. The claim is made that the liens purchased by Crocker were paid or secured by this mortgage, so that when the complainant pays his share of the moneys expended to purchase these liens he is, in equity, entitled to share in this mortgage. The evidence does not lead to the conclusion that any of these liens were ever paid. It establishes, so far as it establishes anything upon the subject, that Crocker took this mortgage as collateral security for expenditures which he had made and might make to protect and preserve the property of the mortgagor, and that he has expended tens of thousands of dollars more than the amount of this mortgage for this purpose. The record does not disclose with any such clearness or certainty as is requisite to warrant a decree what particular expenditures were secured by this mortgage for $150,000, or whether or not those made for the purchase of the Pettigrew, the mechanic's, and the Wolf Company liens were in any way protected by it.

Nor does it satisfactorily appear, as counsel insist, that the taxes, insurance, and other expenses paid by Crocker to preserve and protect the property and the improvements which constitute the 200 acres were ever paid or secured by this mortgage for $150,000. Their payment was necessary for the protection of the property covered by the first mortgage, and it is the duty of the complainant to pay his share of them as a condition of receiving the benefit of the security. The complainant failed to prove that he was entitled to any interest in the mortgage for $150,000.

Two hundred acres of land were charged with the lien of the mortgage in which the parties to this suit had a common interest. Forty of these 200 acres, in the southeast quarter of the northwest quarter of section 25, township 101, of range 50, were not subject to the mechanic's lien. The decree nevertheless quiets the title in this tract in

the defendant unless the complainant pays to him 6 $^{47}/_{1000}$ per cent. of the entire amount which he paid to protect the mortgage, including the amount paid at the sale under the mechanic's lien. This is an obvious error. Since the mechanic's lien was not a charge upon these 40 acres, the complainant was entitled to his share of the security furnished by the mortgage upon them without paying any part of the purchase price of the land sold under the mechanic's lien which did not cover them.

There are many other errors alleged, but a careful examination of the record satisfies that no others exist. The decree is founded on a well-established principle of equity, and it is broadly right, but in some minor particulars must be corrected. First. The title to the southeast quarter of the northwest quarter of section 25 should not be quieted in the defendant in case the complainant fails to pay the amount, the payment of which shall be required by the court as a condition of a decree that he shall receive a share in the Pettigrew, mechanic's, and Wolf Company liens and in the titles thereunder. Second. If the complainant should make the payment required of him, he should recover 6 $^{47}/_{1000}$ per cent. of the title under the mechanic's lien, of the Pettigrew judgment, and of all titles and property which those liens have secured to the defendant, but only upon condition that he pays in addition to the amount specified in the present decree 6 $^{47}/_{1000}$ per cent. of the additional amounts which Crocker has expended to protect these liens and titles and of the interest thereon. Unless the parties stipulate the necessary facts, this case should again be referred to a master by the Circuit Court to ascertain and report the extent, validity, and effect of the liens upon and titles to the property not covered by the mortgage, if any, which have inured to the defendant, Crocker, by virtue of the purchase of the three liens that have been discussed and the amounts expended by the defendant in procuring and protecting these titles and the property to which they attach. Upon the filing of this report a decree should be rendered in favor of the complainant of the character heretofore indicated. · The decree below is accordingly reversed, and the case is remanded to the Circuit Court, with directions to take further proceedings in accordance with the views expressed in this opinion.

HOOK, Circuit Judge, concurs in the result.