## WRIGHT et al. v. MATHIS et al.
### No. 12436.

Court of Civil Appeals of Texas. Fort Worth.

March 14, 1931.

Rehearing Denied May 30, 1931.

Bonner-Bonner & Childress and J. E. Winegart, all of Wichita Falls, for appellants.

Harry Bunnenberg, of Wichita Falls, and C. P. Engelking, of Electra, for appellees.

CONNER, C. J.

This suit was originally instituted by Robert Mathis, for himself and as assignee of R. M. Long, J. A. Howard, J. M. Bradshaw, A. B. Long, and E. H. Kilgroe, upon accounts aggregating $819 for daily wages performed by the named parties upon a described oil and gas lease in Wichita county, and to secure which Mathis sought to establish and foreclose a laborer's lien upon the lease in question. As instituted, the suit was against Roy F. Wright, Panhandle Oil & Refining Company, Morris Persky, U. S. Machine Shop, Inc., Halliburton Oil Well Cementing Company, Roy Foster, J. R. Leath, R. E. Leath, C. V. Derden, and W. J. Kelly. The parties named as defendants and who are now parties to this appeal appeared either by answer or plea of intervention. Rose Campbell intervened, claiming an undivided 1/32 interest in the oil lease. The Panhandle Oil & Refining Company set up a claim for $4,000, with interest and attorneys' fees, due upon a mortgage executed by Roy F. Wright, the owner of the lease, prior, as will later appear, to the inception of any of the liens involved in this appeal. It also claims an additional amount of $300 due upon a note, with interest and attorneys' fees, plus $1,200 as the expense of putting a newly drilled well on the pump, and another item of $1,733.13 of expense in the production of oil, all sums advanced and requests being made under the terms of an agreement with Roy F. Wright at the time the $4,000 note and mortgage was given. Morris J. Persky also intervened, setting up an account for material furnished, aggregating $1,226.26, to secure which he also claimed a lien. The record further discloses the names of numerous other parties who had performed labor on the lease in question, but who had executed what is termed a "subordinating agreement" with the Panhandle Oil & Refining Company, by the terms of which they agreed that their claims might be subordinated to the claims of the said company. None of the persons here referred to are parties to this appeal.

Upon the trial, which was before the court without a jury, the court entered a judgment in favor of the Panhandle Oil & Refining Company for the amount found to be due upon the $4,000 note and the $300 note and declared them to be superior to all other liens. The account of Morris Persky for $1,226.25 with the lien claimed by him was also allowed and adjudged, but this lien was declared subject to the prior liens of the Panhandle Oil & Refining Company by virtue of the subrogation agreement. The court further adjudged in favor of the plaintiff Robert Mathis for the aggregate sum of $819 with the claimed laborer's lien foreclosed, and declared said lien to be inferior only to the $4,000, $300, and $1,200 liens of the Panhandle Oil & Refining Company. Next judgment was rendered for the Panhandle Oil & Refining Company for the cost of operating the lease from March 1, 1929, to December 21, 1929, in the sum of $1,733.13; the court next found that Rose Campbell had no interest in said oil lease and entered judgment denying her any relief.

The judgment directed that the lease be sold and the proceeds thereof, as well as the proceeds of the oil that had been produced during the time involved, be applied first to the extinguishment of the Panhandle Oil & Refining Company's first lien of $4,000 with its accumulated interest and attorneys' fees of $367.95; next to the extinguishment of the Panhandle Oil & Refining Company's $1,200 lien, with interest and attorneys fees, aggregating the sum of $1,400; next to the payment of the claim of Robert Mathis for the sum of $819; next to the payment of Morris Persky's lien of $626.25; and next and last to the payment of the Panhandle Oil & Refining Company's equitable lien of $1,733.13.

From the judgment so entered, writs of error to this court have been sued out by the Panhandle Oil & Refining Company, Roy F. Wright, Rose Campbell, and her husband, Ed. Campbell, and the Halliburton Oil Well & Cement Company. The parties last named having severally presented briefs, we will first briefly dispose of the questions presented by Rose Campbell and the Halliburton Oil Well Cement Company. Both claims were denied by the court, and error is assigned to the judgment in these respects. We conclude that the judgment against Rose Campbell cannot be disturbed. She claims an undivided 1/32 interest in the lease, and it is contended that the undisputed evidence shows that she was the owner of that undivided interest. It is undisputed in the evidence that at the inception of the transactions involved the legal title to the oil lease in question was in Roy F. Wright; that Roy F. Wright was a nonresident, living in Chicago, and gave to his brother-in-law, D. D. Moninger, power of attorney, vesting in him full and absolute authority to take possession of, manage, and operate the lease in all respects as fully as could be done by Wright himself. It seems from Moninger's testimony that an undivided 1/32 interest in the lease had been issued to one J. J. Beauregard, of Wichita Falls, which was later canceled, and at no time during the period in question has he made any claim to it, or claimed any part of the proceeds of the oil produced.

Martin C. Koebel testified that he was representing Mrs. Campbell, among others; that Mrs. Campbell was a married woman whose husband's name was Edward. Jouette Bonner testified, among other things, that he had filed the pleadings in behalf of Rose Campbell and husband; that Mr. Koebel was an attorney from Chicago and in attendance upon the court; that he did not know when he first heard of the claim of defendant Rose

Campbell, but-it was some time between August, 1928, and the date of the trial; that he received his information through correspondence with Mr. Koebel, which he declined to produce; that he had never received any direct request from Rose Campbell or her husband to appear in the suit; that "I know what kind of a claim she claims in this property. It is an assignment to an interest in it. 1/32nd interest. I knew that before a moment ago when Mr. Koebel stated what he thought it was. It is an assignment to an oil and gas lease. I can't say positively I know where Rose Campbell lives, but I think she lives in Chicago. I got that information through or from Mr. Koebel."

■ We find no transfer or other evidence of title in Rose Campbell other than that indicated by the testimony of Mr. Koebel and Mr. Bonner, and we conclude that that evidence is not sufficient to authorize a reversal of the judgment against Rose Campbell and her husband. If in fact she had an assignment, no excuse is offered for it not having been produced; all that Mr. Bonner seems to have known about her claim was information received through Martin Koebel, and Mr. Koebel in testifying as a witness at no time stated that he had ever seen or known of a conveyance of any kind sufficient to divest the original legal title of Roy F. Wright and invest the same in Rose Campbell. The judgment of the court, finding that this 1/32 interest was not in Rose Campbell, but in Roy F. Wright, must, therefore, be upheld.

The Halliburton claim was a duly verified account for four days cementing, beginning January 2, 1929, aggregating $675. The evidence wholly fails to show that the proper notice of this account was given or the proper record made thereof to establish in the company a lien as claimed, and, while it does not appear clear to us why the court might not have rendered a judgment in favor of the cement company as against Roy F. Wright for the $675, no complaint of a failure in this respect seems to have been made, and the court's judgment denying the account will also be sustained.

■ We are thus brought to the concluding, controversy affecting the Panhandle Oil & Refining Company and Robert Mathis. It will be recalled that Robert Mathis was not a party to the subordinating agreement, and that he, hence, at no time has waived his right, if one he has, to priority over the liens of the Panhandle Oil & Refining Company. It is contended in his behalf that his account began prior to the acquisition of right in the Panhandle Oil & Refining Company. While this appears to be true from the statement of facts, yet it further appears that that account was in all respects fully paid prior to the 2nd day of November, 1928, nearly a month after the Panhandle Oil & Refining Company had taken over the lease, and that the account for labor, aggregating $819, accrued on and after November 2, 1928. Without doubt, therefore, the Panhandle Oil & Refining Company's mortgage lien for $4,000, interest and attorneys' fees, was prior in point of right to that of Robert Mathis, and we so find.

■ It is contended in behalf of the Panhandle Oil & Refining Company that Robert Mathis failed to sufficiently comply with the statutes in giving notice of his intention to claim a lien and in the presentation and record of his account. The testimony is to the effect that Mathis gave notice of his intention to Mr. Moninger to claim a lien on either the 10th or 11th of November, 1928. His account was duly identified and recorded on December 20, 1929. We think the account was sufficiently identified to comply with subdivision 2 of article 5453 of our statutes, and if the notice was given on November 10, 1928, as the court below must have determined, it was in time, and we feel unable to say from the record that the court was in error in sustaining the Mathis lien. However, in our disposition of the matter, we have not attached special importance to the formalities required in establishing a day laborer's lien under the statutes, for it is to be observed that the priority of the contract lien of the Panhandle Oil & Refining Company for $4,000 cannot be questioned, and the record discloses that the lease involved was about to be lost for want of sufficient production; that, to save it, it was necessary to further develop the lease, and to that end the lease owner, Roy F. Wright, through his duly authorized representative Moninger, contracted with the Panhandle Oil & Refining Company to furnish the necessary means and drill another well, which it did. There was no objection to such an arrangement by any of the parties to this suit. While Robert Mathis and the laborers whose accounts were assigned to him do not appear to have joined in the subordinating agreement, yet it nowhere appears that they objected thereto, and it further appears that each and all labored in drilling and developing the very well that the Panhandle Oil & Refining Company had contracted to drill. It was therefore evidently in the interest of all, and we think we can imply the consent of all, or at least deny any one of them the right to remain silent and wait to object until the beneficial results contemplated were obtained and then claim participation therein, to the exclusion of others. Under the court's findings, all labor and material for which claims were made was performed and furnished, as stated, after the contract lien for $4,000 was affected. All sums of money, material, and labor were, in proportion to its extent, alike useful and necessary for the accomplishment of the general good, and therefore should have

equality of right to satisfaction, "in accord with authorities to be later cited."

We hence think that, after the contract debt of $4,000 due the Panhandle Oil & Refining Company, with interest and attorneys' fees, as fixed by the court's judgment, aggregating $4,830.81, is paid, the remainder of the proceeds of all oil produced at the time of sale, as hereinafter directed, should be applied, first, to the payment of all costs of litigation; second, that the remainder should be distributed rateably among those in whose favor the judgment has been rendered. In this way each judgment claimant is made to rateably bear his share of all expenses, all moneys and material contributed to the general welfare, and to rateably share in the net benefit. In such a distribution the excess proceeds, if any, should go to the owner of the lease. The foregoing method of disposition rests upon equitable principles, and hence the irregularities of the several laborers, in whose behalf judgment has been rendered, in attempting to fix a lien on a leasehold estate, are immaterial. In other words, our judgment is based on the equities of the case and not necessarily on the asserted liens and priority. The Panhandle Oil & Refining Company undoubtedly obtained and held the rightful possession of the lease and expended moneys in its development. The laborers and materialmen also participated in the development, and we think the relation of the Panhandle Oil & Refining Company, laborers, and materialmen to one another and to the lease may be analogized to the relation of tenants in common, and it is well recognized in equity that "contribution also lies between joint tenants, tenants in common and part owners of ships and other chattels for all charges and expenditures incurred for the common benefit." See Story's Equity Jurisprudence, vol. 2 (14th Ed.) § 680. In § 681, in speaking of the equitable lien which rests upon property to secure the proper contribution, the author says: "It generally exists in favor of artisans and others who have bestowed labor and services upon the property in its repair, improvement, and preservation."

The theory here suggested is plainly declared by our Supreme Court in the case of Perry's Adm'r v. Smith, 34 Tex. 277. In the case of Hanrick v. Gurley, 93 Tex. 458, 54 S. W. 347, 55 S. W. 119, 56 S. W. 330, it was held that a cotenant expending means to protect an estate was entitled to call upon his cotenants for contribution where they sought partition. In the case of Burnham v. Hardy Oil Co. (Tex. Civ. App.) 147 S. W. 330, 334, where it appears that various oil companies obtained leases on certain lands, and that, after the discovery of oil, various heirs of previous grantors in the chain of title instituted suit for their interest and for damages, claiming, among other things, the full value of their portion of the oil extracted from the ground, the claim of one of the parties was held to be good. In speaking of the relation of the parties to one another the court said: "Concerning its liability to plaintiffs with reference to oil taken from the land, we think the Texas Land & Cattle Company, having an unquestioned undivided interest in the league, had, by virtue of its undivided ownership in the land, the right to extract oil from the tract. In case oil was not found, it would have to bear the loss of its experiment and could not call on a nonparticipating cotenant for contribution. But where it found oil and marketed the same, the cotenant requiring it to account to him for his interest in the product, measured by his interest in the land, would be required to allow his proportion of the necessary cost of producing and marketing the product. Wolfe v. Childs, 42 Colo. 121, 94 P. 292, 126 Am. St. Rep. 152. This reasonable expense would include the cost of the machinery and appliances and other means necessary and proper to the production. In other words, all reasonable expenses incurred in the production and marketing would have to be deducted from the gross value, before a division of the proceeds between the cotenants. The result of the above is that the Texas Land & Cattle Company, or its lessees of the land, had the right to pay and to charge to the fund derived from the product the reasonable cost of what was necessary to be done in producing and marketing the oil. This being so, it, or its lessee, had the right to contract with the Rio Bravo Oil Company for a pumping plant and a pipe line for utilizing the oil and to pay for the same, either in money or in oil; and in a suit by other cotenants against the producing cotenant for its share of the value of the oil, the cost of the plant and pipe line to the extent that it is fair and reasonable should be allowed. And the Rio Bravo Oil Company would not be liable to plaintiffs for the oil it received for such necessary improvements, if it was a fair equivalent therefor. This does not present the case of a trespasser taking oil from another's land, in which a different rule would apply. O'Neil v. Sun Co. [58 Tex. Civ. App. 167], 123 S. W. 172, 176; Bender v. Brooks [103 Tex. 329], 127 S. W. 168, 170 [Ann. Cas. 1913A, 559]. Under the above circumstances, we are of opinion that the Rio Bravo Oil Company would not be liable to plaintiffs for the oil it took at its reasonable value in payment for the plant and pipe line supplied by it."

In Simpkins on Equity, page 624, it is said:

"Where one of several sureties, or one of several co-obligors, pays the whole debt, or more than his share of the amount due, equity will equalize the burden by forcing contribution from those jointly liable, until the party paying has been reimbursed the excess over

what he was required to pay, had those jointly obligated done their duty. Merchants' Bank v. McAnulty, 89 Tex. 124, 33 S. W. 963, 965; Moore v. Hanscom (Tex. Civ. App.) 103 S. W. 665, 672, and cases cited; Jarvis v. Matson (Tex. Civ. App.) 94 S. W. 1079; Booker v. Crocker, 132 F. 7, 65 C. C. A. 627; Rush v. Bishop, 60 Tex. 178; Mateer v. Cockrill, 18 Tex. Civ. App. 391, 45 S. W. 751; Jalufke v. Matejek, 22 Tex. Civ. App. 384, 55 S. W. 395; Graves v. Smith, 4 Tex. Civ. App. 537, 23 S. W. 603; Watkin Music Co. v. Basham, 48 Tex. Civ. App. 505, 106 S. W. 734.

"Like subrogation, it rests upon the maxim that 'equality is equity', and is purely a creature of equity."

It only remains to determine the further rights of the parties. We finally conclude that the Panhandle Oil & Refining Company is entitled, as before stated, to judgment for its debt, interest and attorneys' fees, on the $4,000 note and mortgage executed by Roy F. Wright. That this debt constitutes a first lien upon the lease in question and upon the proceeds of all oil produced during the operation of the lease by the Panhandle Oil & Refining Company as well as also upon all oil that may be hereafter produced prior to the date of the sale hereinafter directed; and that it also have an equitable lien on all of said properties for the payment of the $300 note executed November 2, 1928, that being the same day upon which the plaintiff Robert Mathis began his daily labor on the well, in the development of which the $300 was applied. And also a further equitable lien to secure the sum of $600 paid Morris Persky on his account of $1,200 for material furnished. And a further equitable lien to secure the sum of $1,733.13 expended by the Panhandle Oil & Refining Company in the operation of the well involved. We further find that the plaintiff Robert Mathis has at least an equitable lien upon the properties involved to secure the payment of his account for daily labor, and also that Morris Persky is entitled to such lien to secure the unpaid balance of $626.25 on his account for material. We find that the equitable liens of the Panhandle Oil & Refining Company, Robert Mathis, and Morris Persky, as above detailed, should be held to be on a parity or equality of legal standing, and that in the disposition of the proceeds of the sale of the lease and of the proceeds of the oil, which is hereby directed, the Panhandle Oil & Refining Company is entitled to and should receive from both Morris Persky and Robert Mathis contributions for their pro rata parts of the several sums other than the $4,000 indebtedness, above awarded to the Panhandle Oil & Refining Company expended in the development and operation of well No. 2 involved in this controversy; such contributions on their part to be in proportion to their several rights of recovery to the grand total of the sums for which an equitable lien has been declared in favor of the Panhandle Oil & Refining Company; for all of which the judgment below will be here reformed, and, as so reformed, will be now and here rendered in accord with the foregoing findings. As to the parties who have not appealed, the judgment below is left undisturbed.

### On Motion for Rehearing.

On re-examination of the statement of facts (pages 14, 15, 19, and 28, 42, 43, 44) we find that in ascertaining the sums due the Panhandle Oil & Refining Company, to which that company is justly entitled to an equitable lien together with others as provided for in the opinion, we omitted $600 which should be added to the judgment we have rendered. This $600 was a part of $1,200 borrowed by the agent of Roy F. Wright of the Panhandle Oil & Refining Company to put the well, after drilled, upon the pump. Of this $1,200, $600 was paid to Morris Persky, for which, in our opinion and judgment, credit was given the Panhandle Company. The remaining $600 we find was appropriated by the representatives of Wright in the payment for other labor and material used in putting the well upon the pump. It is accordingly ordered that our original opinion and judgment in this case be so corrected as to show the Panhandle Company entitled to receive this additional sum as a part of the fund for which it has been adjudged an equitable lien together with Robert Mathis.

In oral argument on the motion, fear was expressed lest our opinion be construed as holding that the laborer's lien, such as claimed by Robert Mathis and his assignors, extended to the oil after its production as well as to the leasehold estate itself. As to this we think it sufficient to say that that question was neither presented, considered, nor determined by us.

In all other respects the motion for rehearing is overruled.