MISSOURI, K. & T. RY. CO. OF TEXAS v. LONG. (No. 617.)

(Court of Civil Appeals of Texas. Amarillo. May 16, 1914. Rehearing Denied June 6, 1914.)

1. CARRIERS (§ 83*)—BILLS OF LADING.

Under the Texas statute requiring a railroad company to deliver up the possession of goods to the owner or consignee upon payment of the freight charges, as shown by the bill of lading, etc., a railroad company has no right to impose, as a condition to the delivery, the surrender of the bill of lading, but can only require the production of the bill of lading for inspection.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 308–315; Dec. Dig. § 83.*]

2. CARRIERS (§ 94*)—TRANSPORTATION OF GOODS—FAILURE TO DELIVER—MEASURE OF DAMAGES.

In an action by a consignee against a carrier for conversion of a car of apples in refusing to deliver them on the production of the bill of lading, the measure of damages was the interest on the value of the property during the time of its retention and any amount that the property depreciated in value while it was withheld.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 367–395, 456; Dec. Dig. § 94.*]

Appeal from Cooke County Court; R. V. Bell, Judge.

Action by Smith Long against the Missouri, Kansas & Texas Railway Company of Texas. Judgment for plaintiff, and defendant appeals. Affirmed.

C. C. Huff and A. H. McKnight, both of Dallas, and Garnett & Garnett, of Gainesville, for appellant. Stuart, Bell & Moore, of Gainesville, and H. L. Stuart, of Oklahoma City, Okl., for appellee.

HALL, J. Appellee contracted for a car of apples, to be shipped from Rockport, Mo., by way of appellant's line, to Greenville,

Tex., with "shipper's order bill of lading" attached to the draft. Appellee resided at Gainesville, Tex., and after he had paid the draft, and had taken up the bill of lading, was notified by the agent of appellant at Gainesville that the car of apples had come to Gainesville instead of going to Greenville, Tex. Appellee then showed the agent of appellant at Gainesville the paid draft, saying at the same time that he had sent the bill of lading to his agent at Greenville. Thereupon, according to the allegations of appellee, in order to obtain relief from the situation, he made a verbal contract with O. B. Smith, appellant's agent at Gainesville,· in substance as follows: Appellant agreed to ship the car to Denton for appellee and agreed to notify by wire the agent of appellant at Denton that the said Smith had the bill of lading and for the agent at Denton to deliver the car to appellee upon his paying the freight charges. Appellee agreed to have the bill of lading returned to the agent at Gainesville, which was done later. C. I. Long, the son and agent of appellee, in charge of his business at Denton, notified the cashier of the appellant at Denton of the agreement between his father and the agent at Gainesville, and appellant's cashier at Denton consented to the arrangement. It appears that thereafter, on the 12th day of October, when appellee's draymen came to unload the apples and tender the freight, the cashier declined to deliver the apples and said he would not turn over the car until the bill of lading was produced, "even if it was in New York City." Subsequently the apples were sold by appellant for the payment of freight and other charges, and appellee filed this suit for conversion of the apples and for breach of the contract of delivery. We adopt the findings of fact filed by the trial court, which are in part as follows:

"I find that on October 4, 1911, H. R. Kurth, at Rockport, Mo., sold and shipped a car load of apples, consigned to shipper's order notify Smith Long, destination Greenville, Tex., via Kansas City and M., K. & T. Ry.; that Kurth made draft on plaintiff for the purchase price of the apples and attached the same to the bill of lading, mailing both to a bank in Gainesville, Tex.; that by mistake the station agent for the R. L. & N. Ry. Co. at Rockport issued a waybill accompanying said shipment and inserted Gainesville as the destination of said car instead of Greenville. I find that said draft upon plaintiff reached the bank in Gainesville before the arrival of the car of apples and was promptly paid by plaintiff, who took up the bill of lading; that, before the arrival of the car in Gainesville, he supposed, as shown in the bill of lading, the apples had gone to Greenville, and thereupon, by his indorsement upon said bill of lading, directed the delivery of said car at Greenville to his agent there, R. S. Mays, and mailed said agent the bill of lading before the arrival of the car at Gainesville; that upon the 9th or 10th of October, after plaintiff had examined the apples in the car at Gainesville, he agreed with the agent of appellant at Gainesville that said agent would divert the car from Gainesville to Denton, and, upon production of the paid draft, appellant's said agent, Smith, agreed to notify

the agent of defendant at Denton that he (Smith) held the shipper's order bill of lading so that plaintiff could get possession of the car immediately upon its arrival at Denton. It was further agreed that plaintiff would have said bill of lading returned to himself from Greenville and would then turn it over to the said Smith at Gainesville; that, in pursuance of this arrangement, the said Smith did divert the car from Gainesville to Denton, and that, on the evening of October 11th, C. I. Long, plaintiff's agent at Denton, called upon defendant's cashier at that point, and told him of the arrangement plaintiff had made with defendant's agent at Gainesville, and requested said· cashier to deliver said car upon its arrival to one A. P. Osborne, an agent of plaintiff in Denton, who would pay the freight charges and was authorized to accept the· car for plaintiff, and that said cashier consented to the arrangement; that on the next morning, when the drayman, as agent for plaintiff, called upon defendant's agent at Denton for the car of apples, at the same time proposing to pay all the freight charges against the car, he was· asked for the shipper's order bill of lading, and having informed the cashier that he did not have it, that it was in Greenville, the cashier refused to deliver the apples."

There was a judgment for $413 damages after deducting freight and other charges. The court concluded that appellant was guilty of conversion, and that when the bill of lading, with draft attached, had been taken up, it had served its purpose.

[1] We shall not consider appellant's assignments of error in detail, but it is contended, first, that appellant· had the lawful right to instruct its station agents not to deliver freight covered by a shipper's order bill of lading, without production of such bill of lading. The evidence in this case shows that, prior to the transaction out of which this suit has grown, appellant had by circular letter ˙instructed its agents not to deliver freight covered by shipper's order bill of lading without obtaining possession of the original bill of lading. We are cited to Hutchinson on Carriers, § 130, and Elliott on Railroads, § 1427, sustaining appellant's contention that such a regulation is a reasonable one. The rule in this state, however, is settled that the carrier has no right to demand the surrender of a bill of lading, but that its right ends by requiring the production of it for inspection. It is said by the Supreme Court in Dwyer v. G., C. & S. F. Ry. Co., 69 Tex. 707, 7 S. W. 504:

"The question to be determined is: Can a railroad company in this state lawfully refuse to deliver goods in its possession to the owner or consignee upon tender of the freight charges as shown by bill of lading, where the goods have been hauled over connecting roads, and the charges shown by the waybill are greater than those on the bill of lading, unless it be surrendered to the carrier? Section 1 of an act of the Legislature provides that it shall be unlawful for any railroad company to collect, or attempt to collect, from the owner or consignee of any goods, wares, or merchandise, a greater sum for transporting˙ the same than is specified in the bill of lading. Section 2 declares that any railroad company, having possession of goods, wares, or merchandise, shall deliver the same to the owner or consignee upon payment of freight charges, as shown by bill of lading."

In this case it appears that Dwyer tendered the freight, as shown by the bill of lading, and demanded that the freight be delivered to him. Appellee refused to deliver unless the appellant would surrender the bill of lading itself, basing the refusal upon the fact that, since the freight charges, as shown by the bill of lading, were less than that shown by the waybill, the possession of the bill of lading was necessary in order to make settlement with the connecting carrier. In passing upon this contention, the court said:

"But we do not believe that it follows that the bill of lading should be surrendered from the fact that it is required to be presented in order to obtain possession of the goods. It is claimed that, after possession of the goods has been delivered to the owner as consigned, the bill of lading becomes the property of the carrier and that the carrier is entitled to possession of it. Upon like reason, as is claimed, the maker of a note upon payment is entitled to possession as against the payee. The instances are not analogous, for, after the note is paid, it is entirely useless to the payee, and this may be the reason for the universal custom of surrendering the note instead of executing a receipt for its payment; but, as before suggested, the bill of lading may be of use to the consignee or owner of the goods after delivery has been made. It must be conceded that the bill of lading was at one time the property of the owner of the goods, and it is not perceived how the delivery of them could destroy his right in this property without his consent. If the right to the bill of lading, which is both a receipt and a contract in writing, passed to the carrier upon the delivery of the goods, there would be no need to invoke the law of custom; if it did not, it follows that the owner could not be deprived of it without his consent, and it is, we think, unreasonable that a custom should require the surrender of a valuable right in order to obtain possession of property that the law, without condition or qualification, requires should be delivered."

We find this authority has been followed several times in this state, and upon it, we think, turns the rights of the parties. Appellant's agent knew Long was the consignee of the car in question, and must be held to have known that production, by him, of the draft marked "paid" carried with it possession of the bill of lading. The agreement of Smith, the agent, with plaintiff, to divert the car from Greenville to Denton, and his promise to wire the agent at Denton to deliver the car, and that he had the bill of lading, constituted a constructive delivery, even if it could be held that the manual delivery of the bill of lading was necessary.

The greater part of appellant's brief is predicated upon the proposition that the agent, Smith, at Gainesville, had no right to bind appellant's agent at Denton, to deliver the apples without surrender of the bill of lading. As an abstract proposition of law, this is correct, but it has no application to the facts of this case. Appellee's son had explained the situation of affairs to the agent at Denton, who had agreed that the car would be delivered. While it does not seem to have been stressed, either upon the trial

or in the briefs of either party, the error of the initial carrier in naming the wrong destination in the waybill was the beginning of the trouble, and, under the Carmack Amendment to the Hepburn Act, appellant was liable for the damages resulting by reason of such negligence, if any. We find no fault with the findings and conclusions of the trial court and overrule appellant's assignments of error attacking them.

[2] By its last assignment, appellant insists than an incorrect measure of damages was applied to the facts by the trial court. Reference to the record shows that the court has adopted the measure applied in the similar case of Field v. Munster, 11 Tex. Civ. App. 341, 32 S. W. 417, which we think is correct.

It is our opinion that a proper judgment has been rendered, and, finding no reversible error, it is affirmed.